[No. 17968-1-III. Division Three. April 6, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. GABRIEL CISNEROS CAMPOS, *Appellant*.

Scot D. Stuart and Kelli K. Armstrong of Law Office of Scot D. Stuart, for appellant.

Rick Weber, Prosecuting Attorney, and Dale L. Lehrman, Deputy, for respondent.

BROWN, J. — Gabriel Campos, found guilty of possessing cocaine with intent to deliver, appeals the sufficiency of evidence for intent. We affirm.

## FACTS

In April 1998, at approximately midnight, Officer Kelly Hook of the Brewster Police Department stopped a pickup truck driven by Mr. Campos for speeding. Francisco Maciel was a passenger in the truck. Eventually, Officer Hook arrested Mr. Campos for suspicion of driving under the influence.

During a search incident to arrest, Officer Hook found a baggie containing white powder in Mr. Campos's front pocket. Lab analysis later identified the substance as 2.5 grams of cocaine. The officer also found $1,750 in small denominations in one of Mr. Campos's pockets. He had an additional $162 in his wallet.

The officer searched the truck and found a baggie under the front passenger seat. The police later determined that the baggie contained 25 grams of cocaine in rock form. Officer Hook also found a pager, a cell phone, a charger for the phone and a new CD player with about 20 CDs. No scales, other bags, bindles or other drug paraphernalia were found in the truck. The CD player belonged to the passenger, Mr. Maciel; the State offered no evidence establishing who owned the other items. Officer Hook also found a purchase agreement for the truck dated March 20, 1998, and a bill of sale in the amount of $300 for a 1984 car.

Officer Hook advised Mr. Campos through an interpreter of his constitutional rights. Mr. Campos waived them. Mr. Campos admitted possessing all of the cocaine that was found. Mr. Campos said he paid $600 for the cocaine and it was for personal use. He explained he often kept cocaine in his truck and had it "because I can have it when I need it, and I don't know anyone here."

Mr. Campos was charged with possessing cocaine with intent to deliver under RCW 69.50.401(a)(1)(i). At trial, Arnold Melnikoff, a forensic scientist with the state crime lab, testified the cocaine that the police recover usually has some kind of dilutant or cutting agent added to it because dealers dilute it to make a greater profit. The cocaine seized from Mr. Campos contained no such dilutants.

Detective Kevin Newport of the North Central Washington Narcotics Task Force testified the typical amount for persons buying for personal use is 3.5 grams, an "8-ball," or less. He testified that, based on his experience, possession of one ounce of cocaine is more consistent with drug dealing than personal use. He also testified police look for certain denominations of money because dealers often carry denominations that correspond to the sales price of drugs, such as $20 for a quarter to half gram, $50 for a gram and $150 for 3.5 grams. He testified an ounce (28 grams) costs

between $900 and $1,100, but conceded the price could be lower over near the coast where Mr. Campos claimed he purchased the cocaine. He also testified the majority of cocaine in Okanogan County was brought into the county.

After the State had rested, the defense unsuccessfully moved to dismiss on the issue of intent. The defense then called Gabriel Valdovinos, Mr. Campos's uncle-in-law. He testified that Mr. Campos has a wife and two children in Mexico and that he sends money down to them. Mr. Valdovinos testified he received a $900 money order from Mr. Campos in February to fix his truck.

Mr. Campos testified he had been living in Everett and worked a variety of jobs since arriving in April 1997. Mr. Campos worked a car lot where he earned between $1,700 and $2,000 per month. In March, he quit that job and began working for a tree planting business earning about $300 per week. Mr. Campos testified he did not have a savings account. He explained he belonged to a money saving group and had received $1,000 from the group in January or February.

He testified he was in Okanogan County for the day to visit some friends and relatives. He admitted possessing the cocaine but solely for personal use. He purchased the cocaine in Seattle on the day he left. He bought an ounce because it was cheaper that way. He said the $1,750 was from his car lot job and that he had no other place to keep it. He testified he borrowed $1,000 from his cousin and traded in his old truck worth $3,000 to make a down payment on his current truck worth over $13,000.

The State asked him about a piece of paper the police found in his wallet that had the Spanish word for snow written on it along with a column of numbers. Mr. Campos said a friend dropped the paper in a restaurant, and he had picked it up in order to return it. On rebuttal, the State recalled Officer Hook. He testified "snow" was slang for cocaine and that the paper could be a ledger for keeping track of drug transactions. Mr. Campos said he had never heard the word used to mean cocaine. Officer Hook in

rebuttal testified that when he initially asked Mr. Campos about the piece of paper at the police station, Mr. Campos told him it was a time log from work. Mr. Campos, in turn, testified that Officer Hook suggested the paper was from work and he simply agreed. In response, Officer Hook denied proposing this answer. Mr. Campos again moved unsuccessfully to dismiss for insufficient evidence at the close of all evidence.

The jury returned a verdict of guilty. Mr. Campos appealed.

## ANALYSIS

The issue is whether the trial court erred by denying Mr. Campos's motion to dismiss on the intent issue at the close of all evidence based upon all evidence.

■ Evidence is sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). All reasonable inferences must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Gentry*, 125 Wn.2d 570, 597, 888 P.2d 1105 (1995).

■ The intent to deliver must logically follow as a matter of probability from the evidence. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). Possession of a controlled substance, without more, is insufficient to establish an inference of intent to deliver. *State v. Hagler*, 74 Wn. App. 232, 235, 872 P.2d 85 (1994). A police officer's opinion that a defendant possessed more drugs than normal for personal use is insufficient to establish intent to deliver. *State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995). Where intent to deliver is inferred from possession of a large quantity of a controlled substance, some additional factor must be present. *State v. Hutchins*, 73 Wn. App. 211, 216, 868 P.2d 196 (1994).

In *Hagler*, the court held there was sufficient evidence to

conclude the defendant, a juvenile, had the intent to deliver where the only additional factor establishing intent was the large amount of cash he possessed. *Hagler,* 74 Wn. App. at 236. The court reasoned:

> Here, accompanying the possession of 24 rocks of cocaine, the additional element suggestive of sale is the sum of $342 in the hands of a juvenile. The inference from that much cash provided circumstantial evidence for the trial court to weigh in deciding that the State had met its burden of proof.

*Id.* In *Lopez,* the defendant was apprehended after he purchased two ounces of cocaine from an informant and an undercover police officer. *Lopez,* 79 Wn. App. at 758-59. When arrested, the defendant possessed the two ounces of cocaine in rock form from the immediate purchase, an additional 4.7 grams of cocaine in 14 bindles and $826.50 in cash at the time of his arrest. *Lopez,* 79 Wn. App. at 769. The court held that the amount of cash in addition to the large amount of cocaine involved was sufficient to support the inference.

In *State v. Brown,* 68 Wn. App. 480, 485, 843 P.2d 1098 (1993), the court held the evidence was insufficient to support an inference of intent to deliver. The sole incriminating evidence was 20 individual rocks of cocaine weighing a total of 5.1 grams and the testimony of the arresting officer that this amount of cocaine was in excess of the amount normally possessed for personal use. *Id.* at 482, 484-85. The State introduced no corroborating evidence:

> This is a naked possession case. Brown had no weapon, no substantial sum of money, no scales or other drug paraphernalia indicative of sales or delivery, the rocks of cocaine were not separately packaged nor were separate packages in his possession, the officers observed no actions suggesting sales or delivery or even any conversations which could be interpreted as constituting solicitation.

*Id.* at 484.

Here, Mr. Campos possessed a large amount of cocaine, only 0.5 grams under an ounce. *See Lopez,* 79 Wn. App. at

769 (one ounce is considered a large amount) (citing *State v. Lane*, 56 Wn. App. 286, 297, 786 P.2d 277 (1989)). Detective Newport testified that this amount of cocaine was more consistent with a dealer than a user because the users usually purchase 3.5 grams or less. While the police did not locate any scales or other drug paraphernalia, Mr. Campos had a substantial sum of money ($1,750) on his person. This qualifies as an additional factor showing intent under *Hagler* and *Lopez*. The State's witnesses testified that a large of amount of cash in small, assorted denominations is consistent with narcotics sales.

Additionally, the State introduced evidence that a pager, a cell phone and a charger for the phone were found in Mr. Campos's truck. Officer Hook testified these items are "tools of the trade" for drug dealers. *See People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026-27, 212 Ill. Dec. 675 (1995) (possession of police scanners, beepers, or cellular telephones is a factor that indicates intent to deliver). The State introduced the piece of paper with columns of numbers and a slang word for cocaine that, according to Officer Hook, could be a record of drug sales. Officer Hook also testified Mr. Campos gave contradictory explanations of the paper.

In sum, although Mr. Campos attempted to offset the State's evidence with innocent explanations, the jury resolved the factual issues in favor of the State. The jury resolves contradictory evidence by making credibility determinations. We do not redecide credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

## CONCLUSION

We hold the evidence was sufficient to support a jury finding that Mr. Campos possessed cocaine with the intent to sell it.

Affirmed.

KURTZ, C.J., concurs.

Schultheis, J. (dissenting) — On this record, I find insufficient evidence of intent to deliver and would reverse.

Generally, a jury may infer specific criminal intent when it is logically probable that a defendant's conduct clearly indicates the requisite intent. *State v. Stearns*, 61 Wn. App. 224, 228, 810 P.2d 41 (1991). Evidence of the intent to deliver must be compelling. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). Possession of a controlled substance—even large amounts of a controlled substance—is insufficient alone to establish an inference of intent to deliver. *State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995). Recognizing that the Legislature treats the crimes differently, we must be careful not to turn every possession of a controlled substance into possession with intent to deliver without substantial evidence as to the possessor's intent, above and beyond the possession itself. *State v. Hutchins*, 73 Wn. App. 211, 217, 868 P.2d 196 (1994) (citing *State v. Brown*, 68 Wn. App. 480, 485, 843 P.2d 1098 (1993)).

Both cases cited by the majority—*Lopez* and *State v. Hagler*, 74 Wn. App. 232, 872 P.2d 85 (1994)—are distinguishable from these facts. The defendant in *Lopez* possessed 2 ounces of cocaine plus 4.7 grams of cocaine contained in 14 separately packaged bindles. He was also carrying over $800. The large amount of cocaine along with the separately packaged bindles and large amount of money suggested Mr. Lopez did not intend to retain the substance for his own use. *Lopez*, 79 Wn. App. at 769. In contrast, Mr. Campos constructively possessed about one ounce of cocaine and the substance was not packaged for multiple sales. Further, the amount of money he carried was consistent with the evidence that he was recently paid his salary and did not have a bank account. These last facts also distinguish Mr. Campos from the defendant in *Hagler*. There the court found intent to deliver from the facts that the defendant possessed 24 individual rocks of cocaine along with $342 in cash. *Hagler*, 74 Wn. App. at 236. In particular, the court found that so much cash in the possession of a juvenile was

unusual enough to provide circumstantial evidence of intent to deliver. *Id.*

Besides possessing one ounce of cocaine and $1,750 in cash, Mr. Campos had a cell phone, a cell phone charger and a pager. Many people—most of whom do not deal drugs—carry such equipment in their vehicles, and the mere possession of these items should not support intent to deliver, absent additional evidence that they were used to arrange deliveries of cocaine. Further, the officer's speculation that the list of numbers might be a ledger for drug transactions does not constitute compelling evidence.

Because convictions for possession with intent to deliver are highly fact specific, they require substantial corroborating evidence in addition to the fact of possession. *Brown,* 68 Wn. App. at 485. The evidence here is neither substantial nor sufficiently corroborative, and I would reverse the conviction.

Review denied at 142 Wn.2d 1006 (2000).