46 P.3d 284 (2002)
111 Wash.App. 747
STATE of Washington, Respondent,
v.
Jeri L. McPHERSON, Appellant.
No. 19988-6-III.
Court of Appeals of Washington, Division 3, Panel One.
May 16, 2002.
*287 Gary C. Hugill, Attorney at Law, Kennewick, Counsel for Appellant.
Andrew K. Miller, Prosecuting Attorney, Kennewick, Counsel for Respondent. *285
*286 BROWN, C.J.
A jury convicted Jeri McPherson of one count of manufacturing methamphetamine (meth) and one count of possessing methamphetamine with intent to manufacture or deliver. Ms. McPherson appeals, alleging (A) insufficient evidence, and trial court error, (B) when admitting as expert testimony a detective's meth lab evidence, and (C) by failing to strike one of the detective's responses to a question asked during cross-examination. We reject each allegation and affirm.

FACTS
The State charged Ms. McPherson with manufacture of a controlled substance, to-wit: methamphetamine (Count I), with possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine charged in the alternative. The State also charged Ms. McPherson with possession of methamphetamine with intent to manufacture/deliver (Count II), with possession of methamphetamine charged in the alternative. The trial court consolidated Ms. McPherson's trial with her co-defendant, Leiton L. Zunker. Accomplice liability was included in the State's case theory.
Pasco City Police Officer John Baker testified he stopped a vehicle having false license tabs. Mr. Zunker was the driver, Ms. McPherson was the center front seat passenger, and Terrence Bowers was in the right-front passenger seat. When asked about the false license tabs, Mr. Zunker claimed he had borrowed the vehicle from a friend whom he was unable to name. Both Ms. McPherson and Mr. Bowers lied about their names. When Mr. Bowers' true identity was discovered, he was arrested on a warrant unrelated to this case.
Concerned the vehicle may have been stolen, and for officer safety reasons, Officer Baker and his cover man, Richland Police Officer Barry Gilk, detained, handcuffed, and conducted a pat-down search of the occupants. In Mr. Zunker's right front pants pocket, Officer Baker discovered a vial containing a grayish-white powder. Suspecting a controlled substance, Officer Baker arrested Mr. Zunker.
Incident to Mr. Zunker's arrest, the officers searched the car's passenger compartment. Significantly, two black bags were discovered, one made of canvas, the other leather; Ms. McPherson claimed both bags. The canvas bag was found on the middle-front floorboard. The leather bag was found on the rear floorboard.
*288 In the canvas bag, officers found a large number of unopened bottles of pseudoephedrine. Under these bottles, the officers found a plastic baggie containing ground-up pseudoephedrine. Found separately from the canvas bag, a pseudoephedrine bottle was located in the back seat, and an unopened box of pseudoephedrine was located on the rear floorboard.
In the leather bag, which apparently served as Ms. McPherson's purse, the officers discovered among other items a citation and court notice belonging to Ms. McPherson, a notebook containing credit card numbers with names that did not match the occupants of the vehicle, a small knife with an unidentified residue on it, and a small box containing a small plastic scale with white powder residue on it. Ms. McPherson specifically claimed the scale, which lab-tested positive for methamphetamine.
With consent from Mr. Zunker, Officer Baker looked in the car's trunk. Officer Baker found a 35-pound cylinder containing what Mr. Zunker said was anhydrous ammonia. The tank contained a trace amount of the gas. Officers found Mr. Zunker possessed $220 cash and Ms. McPherson possessed $80 cash when arrested.
West Richland Police Department Detective Terry Boehmler, assigned to the Metro Drug Task Force, testified in detail about the methamphetamine manufacturing process. Detective Boehmler had attended a 40-hour DEA course on "assessment, analysis and cleanup of methamphetamine labs." Report of Proceedings (RP) at 159. Detective Boehmler related he had attended several conferences in Washington and other states concerning meth labs. The detective indicated he conducted meth lab training for two local police departments and had just completed a two-day meth lab recertification course. In his undercover operations concerning meth labs during the previous six or seven months, Detective Boehmler had investigated 40 to 60 meth labs.
Counsel for Mr. Zunker objected when Detective Boehmler answered in the affirmative to the deputy prosecutor's question as to whether he was "the resident expert on meth labs[.]" RP at 159. The trial court did not rule on the objection before the deputy prosecutor followed up by asking the detective if the drug task force looked to him "as the expert with regard to meth labs?" RP at 159. Without objection, again Detective Boehmler answered in the affirmative. Later, in his direct examination and without objection, Detective Boehmler was asked: "Now, your role with Metro is not just as the resident expert on meth labs, you also participate in the normal controlled buys?" RP at 163.
Detective Boehmler estimated the ephedrine (the equivalent of pseudoephedrine) found in the car could have been processed into methamphetamine worth about $2,000 to $2,500. According to Detective Boehmler, anhydrous ammonia and lithium, rendered from strips or batteries, or another alkali metal-like sodium or potassium, would have been required in addition to the ephedrine to complete the process. According to the detective, approximately 50 percent of the meth labs he had investigated were missing one or two components needed to complete the manufacturing process. Detective Boehmler mentioned other common items used in manufacture like coffee filters, water, acetone, and various types of containers likely to be used in meth cooking operations.
Under cross-examination from Mr. Zunker's counsel, Detective Boehmler admitted he was not a college graduate or chemist. Later in cross-examination, counsel for Ms. McPherson and Detective Boehmler engaged in the following exchange:
Q. Okay. And then finally, because I don't want to get into the science, I was here with a headache listening but basically, whatever this stuff is and however it may be used, the guilty person is the one that has it, possesses it, knows how to and intends to actually use it. Isn't that right?
A. That's, I think, dependent upon them. But that's who we generally charge.
RP at 196.
Counsel for Mr. Zunker moved to strike Detective Boehmler's answer. Ms. McPherson's counsel did not join the motion and, without waiting for a ruling, asked an immediate *289 follow-up question: "At least bring to Court?" RP at 197. The detective answered, "Yes." RP at 197. Neither defense counsel pursued a ruling on the motion.
On re-direct, Detective Boehmler testified that methamphetamine could be sold in an amount as small as one gram for $20 to $40, or a "teener," approximately 1.8 grams for $60 to $80. RP at 199-200.
According to Officer Gilk, Ms. McPherson admitted the scale and the two bags found in the car were hers. Based upon some 400 narcotics arrests, Officer Gilk said the scale was the type commonly used in controlled substances transactions.
Mr. Zunker testified he borrowed the car from a friend. Mr. Zunker said he helped load the anhydrous ammonia tank in the trunk of the car but otherwise had no involvement with it. He stated he was unaware of the bags in the car. Mr. Zunker denied manufacturing methamphetamine. While admitting his initial denial was false and conceding the two grams of meth was enough for transactional purposes, Mr. Zunker said the meth was for his own consumption and to share with others.
Ms. McPherson testified Mr. Zunker gave her a ride in the car, but she had never seen the car before. She admitted the scales seized from the car were hers. She denied any knowledge of the anhydrous ammonia tank and other incriminating items seized from the car. Ms. McPherson said she used the scale to measure purchases of methamphetamine for personal consumption, "because I wanted to make sure that I was not being ripped off." RP at 265. Ms. McPherson denied manufacturing methamphetamine or being aware Mr. Zunker had methamphetamine on his person.
On cross-examination, Ms. McPherson admitted giving the officer a false name shortly before her arrest. She admitted telling Officer Gilk all of the bags in the car belonged to her, but explained that did not include bags of which she was unaware.
The trial court gave an expert witness instruction over objections from both defendants on the ground Detective Boehmler was not an expert. The jury found Ms. McPherson guilty on both counts. After the trial court entered concurrent, standard-range sentences, Ms. McPherson appealed.[1]

ANALYSIS

A. Evidence Sufficiency
The issue is whether the evidence was sufficient to convict Ms. McPherson for manufacture of methamphetamine (Count I), and possession with intent to deliver methamphetamine (Count II).

1. Standard of Review and Applicable Law
A defendant may challenge the sufficiency of the evidence for the first time on appeal. State v. Hickman, 135 Wash.2d 97, 103 n. 3, 954 P.2d 900 (1998); State v. Alvarez, 128 Wash.2d 1, 9, 904 P.2d 754 (1995). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980)).
"When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wash.2d at 201, 829 P.2d 1068 (citing State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wash.2d at 201, 829 P.2d 1068 (citing State v. Theroff, 25 Wash.App. 590, 593, 608 P.2d 1254, aff'd, 95 Wash.2d 385, 622 P.2d 1240 (1980)). The reviewing court considers circumstantial evidence equally reliable as direct evidence. State v. Myers, 133 Wash.2d 26, 38, 941 P.2d 1102 (1997); State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed *290 on appeal." State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
Generally, it is a crime "for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(a). Methamphetamine is a Schedule II controlled substance. RCW 69.50.206(d)(2). Ms. McPherson was convicted of one count of manufacturing methamphetamine (Count I) and one count of possession with intent to manufacture or deliver the methamphetamine (Count II).
In the alternative to Count I, the State charged possession of the precursor drugs with the intent to manufacture. It is "unlawful for any person to possess ephedrine, pseudoephedrine, or anhydrous ammonia with intent to manufacture methamphetamine." RCW 69.50.440.
"`Deliver' or `delivery,' means the actual or constructive transfer from one person to another of a substance, whether or not there is an agency relationship." RCW 69.50.101(f).
"Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.
RCW 69.50.101(p).
"A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).
The State relied on an accomplice liability theory. "An accomplice is charged with, and liable for, a particular crime committed by his principal." State v. Munden, 81 Wash.App. 192, 197, 913 P.2d 421 (1996) (citing State v. Wixon, 30 Wash.App. 63, 76, 631 P.2d 1033 (1981)). The accomplice liability statute partly states:
A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
(i) solicits, commands, encourages, or requests such other person to commit it; or
(ii) aids or agrees to aid such other person in planning or committing it[.]
RCW 9A.08.020(3).
A defendant is an accomplice when he aids or agrees to aid another person in committing a crime by associating herself with that criminal undertaking, participating in the crime as something she desires to accomplish. State v. Carlisle, 73 Wash.App. 678, 680, 871 P.2d 174 (1994).

2. Manufacture
The evidence shows Ms. McPherson had in her actual possession a scale with methamphetamine residue, numerous meth precursors, notebooks inferably containing records of drug transactions, and $80 cash. Under the accomplice liability theory, considering Mr. Zunker's $220 cash, between them they possessed $300, a substantial sum of cash for two persons claiming abject circumstances. Further, a tank containing traces of anhydrous ammonia was in the trunk of the car in which Ms. McPherson was riding. Inferable is the use of the ammonia in the manufacture process, not preparation to use. Finally, Mr. Zunker, as an accomplice, possessed about two grams of meth.
Although Ms. McPherson claimed ignorance of the tank and the meth in Mr. Zunker's possession, it is permissible to infer the meth residue and vial of methamphetamine were the products of their manufacture. In other words, the jury could decide from the facts that the residue and methamphetamine in the vial were derived from Ms. McPherson's and Mr. Zunker's manufacture. The unusual combination of evidence of manufacturing precursors, extracted pseudoephedrine, cash, scale, nearly empty anhydrous ammonia tank, records, and the methamphetamine supports the jury finding.
Further, the circumstances of the arrest were facts before the jury. Ms. McPherson gave false answers to the police when arrested *291 and later testified on many points in an evasive or seemingly incredible and misleading fashion. Much of her testimony was inconsistent with earlier explanations she had given. Naturally, her testimonial demeanor was uniquely left for the jury to observe, but the record supports the proposition that the State severely undermined her credibility. We will not interfere with the jury's credibility determination on those matters. See State v. Campos, 100 Wash.App. 218, 224, 998 P.2d 893, review denied, 142 Wash.2d 1006, 34 P.3d 1232 (2000).
Notably, Ms. McPherson not only possessed the pseudoephedrine precursor in its over-the-counter form, but possessed it in a ground up or powder form as well. Grinding such "pill powder" is a preparatory step to the meth "cooking" process. Smith v. State, 68 Ark.App. 106, 3 S.W.3d 712, 714 (1999). Significantly more is here; Detective Boehmler testified Exhibit 2, which was found in the canvas bag, was not just ground up, but "extracted" pseudoephedrine. RP at 162-63. When the State asked why someone would extract pseudoephedrine, Detective Boehmler answered: "The only reason is for the manufacture of methamphetamine." RP at 163.
That a needed alkali metal, was not, at the time of arrest, present to process a new batch of methamphetamine, does not alter the permissible inference available to the jury of already completed manufacture. The evidence simply allows another inference, that Ms. McPherson and Mr. Zunker were arrested before replenishing supplies to make a new batch of methamphetamine and after completed manufacture. This latter inference was available to the jury on the question of whether Ms. McPherson committed the alternative crime of possessing precursors with the intent to manufacture. Additionally, the absence of commonly used and readily accessible items such as water, coffee filters, or containers is relatively insignificant.
In sum, the evidence was sufficient to allow jury consideration. Given these unique facts, a reasonable juror could conclude beyond a reasonable doubt that Ms. McPherson participated directly or as an accomplice in methamphetamine production. RCW 69.50.101(p). Accordingly, the evidence was sufficient to support Ms. McPherson's conviction on Count I.

3. Possession With Intent to Manufacture or Deliver
The State had to prove Ms. McPherson had actual or constructive possession of methamphetamine for purposes of delivery. State v. Staley, 123 Wash.2d 794, 798, 872 P.2d 502 (1994); State v. Todd, 101 Wash. App. 945, 953, 6 P.3d 86 (2000). Here, the record shows Ms. McPherson possessed a small plastic scale containing a trace amount of methamphetamine. However, Mr. Zunker had in his physical possession about 2 grams of methamphetamine, a quantity sufficient for a drug delivery.
Generally, bare possession of a controlled substance is not enough to support a conviction of intent to deliver or manufacture; at least one other factor supporting an inference of intent must exist. State v. Hagler, 74 Wash.App. 232, 235-36, 872 P.2d 85 (1994). The defendant's intent "must logically follow as a matter of probability from the evidence." Campos, 100 Wash.App. at 222, 998 P.2d 893 (citing State v. Davis, 79 Wash. App. 591, 594, 904 P.2d 306 (1995)).
The evidence of the methamphetamine residue alone was insufficient for purposes of delivery. See Todd, 101 Wash.App. at 953-54, 6 P.3d 86 (reasoning that notwithstanding existence of equipment for manufacturing, there was no finished product for defendant to deliver). Ms. McPherson did not have actual possession of the meth in Mr. Zunker's pocket, and physical proximity to Mr. Zunker alone will not support constructive possession. State v. Portrey, 102 Wash. App. 898, 902-03, 10 P.3d 481 (2000). Other facts may, however, suggest the necessary dominion and control to satisfy constructive possession requirements. State v. Amezola, 49 Wash.App. 78, 86, 741 P.2d 1024 (1987); see also State v. Collins, 76 Wash.App. 496, 501, 886 P.2d 243 (1995) (noting that appellate court reviews totality of circumstances in determining existence of dominion and control).
*292 Moreover, when considering accomplice liability, whether one or the other of the accomplices actually possessed the meth is not dispositive. State v. Fisher, 74 Wash. App. 804, 816, 874 P.2d 1381, aff'd sub. nom. State v. McFarland, 127 Wash.2d 322, 899 P.2d 1251 (1995). Instead, our focus and that of the jury is on whether Ms. McPherson, by her presence and actions, attempted to facilitate Mr. Zunker's possession with intent to deliver. Id. Ms. McPherson's possession of the scales in close proximity with Mr. Zunker, who was carrying a marketable quantity of meth, raises a permissible inference she used the scales to help facilitate Mr. Zunker's possession with intent to deliver. Id. Additionally, the notebooks with presumed records of sales and the $300 possessed between them offer permissive inferences for the jury to resolve.
Significantly, the possession with intent statute encompasses intent to deliver or manufacture. RCW 69.50.401(a)(1)(ii); see also In re Pers. Restraint of Davis, 142 Wash.2d 165, 176,12 P.3d 603 (2000). Given the existence of critical components in meth production, particularly the precursors in Ms. McPherson's admitted possession, the jury could reasonably infer the methamphetamine on the scale was the unpackaged product of Ms. McPherson's manufacturing activity, as well as the remnants of sale activity. From either point of view, sufficient evidence exists to support Count II.

B. Expert Witness
The issue is whether the trial court erred in allowing Detective Boehmler to testify as an expert on meth labs and giving the expert witness instruction regarding him.
We review a trial court's evidentiary rulings for an abuse of discretion. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997). When the trial court's exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse occurs. Id. Otherwise stated, an abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. State v. Castellanos, 132 Wash.2d 94, 102, 935 P.2d 1353 (1997). The rules of evidence guide us. State v. Atsbeha, 142 Wash.2d 904, 913, 16 P.3d 626 (2001). When the question pertains to expert opinion evidence, the trial court does not abuse its discretion if the ruling is fairly debatable. Fraser v. Beutel, 56 Wash. App. 725, 734, 785 P.2d 470 (1990); Davidson v. Municipality of Metro. Seattle, 43 Wash. App. 569, 572, 719 P.2d 569 (1986).
Regarding expert witnesses, ER 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
When considering the admissibility of testimony under ER 702, the reviewing court engages in a two-part inquiry: "(1) does the witness qualify as an expert; and (2) would the witness's testimony be helpful to the trier of fact." State v. Guilliot, 106 Wash.App. 355, 363, 22 P.3d 1266 (citing State v. Farr-Lenzini, 93 Wash.App. 453, 460, 970 P.2d 313 (1999)), review denied, 145 Wash.2d 1004, 35 P.3d 381 (2001). Ms. McPherson does not contend the detective's testimony was not helpful or irrelevant. Consequently, we focus on the detective's qualifications.
Ms. McPherson complains of the detective's lack of a college degree, asserting below that the State was "holding him out to be a rocket scientist." RP at 306. But an expert witness does not have to be "a rocket scientist"; in the appropriate context, "[p]ractical experience is sufficient to qualify a witness as an expert." State v. Ortiz, 119 Wash.2d 294, 310, 831 P.2d 1060 (1992). In this connection, meth production is not "rocket science." Detective Boehmler's testimony supports the proposition that methamphetamine cooking is relatively easy and is done by numerous persons without a higher education. Indeed, Detective Boehmler had participated in 40 to 60 meth-lab busts in the previous seven months alone. From his testimony it is apparent that people of limited education, technical skills, and resources can readily cook meth wherever they can find *293 space using, for the most part, commonly available components.
In any event, a person with sufficient training and experience may qualify under ER 702 as an expert on methamphetamine production notwithstanding that person's lack of a complete and formal college education in the field of chemistry. Here, the record shows Detective Boehmler had completed a one-week, 40-hour DEA course on "assessment, analysis and cleanup of methamphetamine labs." RP at 159. He had also attended several conferences in Oregon, California, and Washington on the subject of meth labs. He had passed his training on to other officers. He had attended a two-day refresher course the week before Ms. McPherson's trial. In terms of practical experience, Detective Boehmler had investigated 40 to 60 meth labs in the first six or seven months of 2000 alone.
Based on the detective's specialized training and practical experience, we conclude Detective Boehmler's background and experience merely went to the weight of his evidence and not its admissibility. In other words, the trial court did not err when permitting Detective Boehmler to testify as an expert. It follows that the trial court did not err when giving the expert witness instruction. The form of the expert witness instruction is not challenged.

C. Alleged Opinion Regarding Guilt
The issue is whether the trial court erred by allowing Detective Boehmler to give an opinion as to Ms. McPherson's guilt.
It is well settled that no witness, expert or lay, may utter an opinion as to the guilt or innocence of a criminal defendant, whether the opinion is a direct statement or an inference. State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987). A witness opinion as to guilt or innocence violates the defendant's constitutional right to have the jury make an independent determination of the facts and render its verdict. Farr-Lenzini, 93 Wash.App. at 460, 970 P.2d 313.
Here, during cross-examination, counsel for Ms. McPherson vaguely asked, "whatever this stuff is and however it may be used, the guilty person is the one that has it, possesses it, knows how to and intends to actually use it. Isn't that right?" RP at 196. In response, Detective Boehmler stated: "That's I think, dependent upon them. But that's who we generally charge." RP at 196. Mr. Zunker's attorney intervened: "Move to strike." RP at 196. Ms. McPherson's attorney did not join in the implied objection. Without waiting for a ruling, Ms. McPherson's attorney instead continued by asking another question: "At least bring to Court?" RP at 197. No further record exists regarding Mr. Zunker's motion.
From this record Ms. McPherson did not join in the motion. In a literal sense, Ms. McPherson's attorney invited the answer and did not object to the responsiveness of the answer. The matter was not pursued further by either counsel at any point in the record and was evidently redressed, if required, by the follow-up question of her counsel. On this record, we cannot find trial court error. Moreover, the question and response were very general in nature, without direct reference to Ms. McPherson, and the detective did not use the term "guilt" or "conviction," but rather spoke generally of charging people who possess and use equipment and raw materials for meth production. Given this record, we conclude the detective's responses do not amount to an impermissible comment on the guilt or innocence of Ms. McPherson.
As noted, the offending statement was a direct response to Ms. McPherson's leading "guilty person" question. A party may not set up an error at trial, and then complain of that error on appeal. In re Pers. Restraint of Thompson, 141 Wash.2d 712, 723, 10 P.3d 380 (2000). Here, if Detective Boehmler's statement was error, it was clearly invited.

CONCLUSION
The record here is sufficient to convict Ms. McPherson for manufacture of methamphetamine *294 (Count I), and possession with intent to deliver methamphetamine (Count II). The trial court did not err when allowing Detective Boehmler to testify as an expert on meth labs or giving the expert witness instruction regarding his testimony. This record does not support the allegation the trial court erred by allowing Detective Boehmler to give an opinion as to Ms. McPherson's guilt.
Affirmed.
SWEENEY and KATO, JJ., concur.
NOTES
[1] Leiton Zunker appealed separately. State v. Zunker, No. 19729-8-III.