FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8: 46

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Personal Restraint Petition of | No. 41556-9-II |
| DANIEL MARSHALL AGUIRRE, | |
| Petitioner, | |
| | UNPUBLISHED OPINION |

QUINN-BRINTNALL, J. — A jury convicted Daniel Marshall Aguirre of second degree rape and second degree assault, with a deadly weapon enhancement. We affirmed the conviction. Aguirre subsequently filed a personal restraint petition (PRP) alleging that (1) his trial counsel failed to adequately inform him of the State's pretrial plea offer, (2) the victim's testimony at Aguirre's military separation hearing[1] was newly discovered evidence, and (3) Aguirre's trial counsel was ineffective for failing to present mitigating evidence at Aguirre's sentencing hearing. We remanded for a reference hearing. The trial court determined that the plea offer was adequately communicated to Aguirre. Based on the evidence presented at the reference hearing, the trial court found that Aguirre failed to meet his burden to prove prejudice. Accordingly, Aguirre's claim that he received ineffective assistance of counsel because of

---

[1] The military separation hearing was a hearing held by the United States Army to determine whether Aguirre would be discharged.

defense counsel's failure to convey the plea agreement fails. Additionally, we hold that the victim's testimony was impeachment evidence and Aguirre did not receive ineffective assistance of counsel at sentencing. We deny Aguirre's PRP.

FACTS

BACKGROUND

A detailed version of the substantive facts, including trial testimony, is set out in this court's prior unpublished opinion affirming Aguirre's conviction. *State v. Aguirre*, noted at 146 Wn. App. 1048, 2008 WL 4062820, at *1-4, *aff'd*, 168 Wn.2d 350, 229 P.3d 669 (2010). Aguirre began dating Emily Laughman[2] in June 2006, when they were both stationed at the United States Army Noncommissioned Officer Academy. On August 26, Laughman went to Aguirre's apartment and they got into an argument. Aguirre assaulted and raped Laughman.

The State charged Aguirre with two counts of second degree assault with a deadly weapon enhancement on one count and one count of second degree rape. A jury found Aguirre guilty of one count of second degree assault and the second degree rape. The trial court sentenced Aguirre to a standard range sentence of 137 months confinement. *Aguirre*, 2008 WL 4062820, at *4. Pursuant to the indeterminate sentencing requirements for the second degree rape charge, Aguirre received a maximum sentence of life, subject to the parole determination of the indeterminate sentencing review board. Aguirre appealed his conviction and we affirmed.

After we affirmed Aguirre's convictions, he filed this PRP, alleging that (1) his trial counsel failed to convey the State's pretrial plea offer, (2) Laughman's testimony at Aguirre's

---

[2] In the transcripts of the military separation hearing, Laughman's name is transcribed as "McLaughlin." McCloud Decl. App. H. The court reporter transcribed her name phonetically and Laughman did not spell her name, therefore we refer to her as Laughman, the name used in all the briefing and our prior opinion.

No. 41556-9-II

military separation hearing is newly discovered evidence entitling Aguirre to a new trial, and (3) Aguirre's trial counsel was ineffective for failing to present mitigating evidence at Aguirre's sentencing hearing. We remanded for the trial court to determine whether Aguirre's defense counsel conveyed the plea offer and whether the plea offer was adequately explained.

PLEA OFFER AND REFERENCE HEARING

On November 17, 2006, per defense counsel's request, the State transmitted a written plea offer to defense counsel. The plea offer was a plea of guilty to second degree assault - domestic violence and third degree rape - domestic violence with a determinate sentence of 14 months incarceration. The plea agreement also required that Aguirre be evaluated for "domestic violence, mental health, and sexual deviancy issues and comply with any recommended treatment." McCloud Decl. App. B. The standard sentencing range for the current charges was printed at the top of the plea offer in bold, italicized, and underlined print stating, "Standard range for these offenses is 123-159 months to LIFE under RCW 9.94A.712 with lifetime supervision also per RCW 9.94A.712." McCloud Decl. App. B. The same standard sentence range was also included in the State's cover letter accompanying the plea offer.

In his PRP, Aguirre alleged that his trial counsel never communicated the above plea offer to him and trial counsel did not explain to him that by not taking the plea offer he risked a life sentence. Aguirre also stated that if he had been informed about the plea offer, he would have accepted it. On May 27, 2011, we remanded to the trial court for a reference hearing. The trial court was directed to "make findings of fact and conclusions of law as to whether Aguirre's trial counsel conveyed the State's November 2006 plea offer to Aguirre and if so, whether Aguirre's trial counsel explained the consequences of that plea offer." Order Remanding to Superior Ct. for Reference Hr'g (May 27, 2011).

3

No. 41556-9-II

The trial court held the reference hearing on July 18, 2011. Seven witnesses testified at the reference hearing: Karen Sanderson, the defense investigator; Rose Aguirre, Aguirre's mother; Olene Steele, trial counsel's legal assistant; Aguirre; Lt. Stephanie Klein, supervisor at the Thurston County Jail; George Steele, Aguirre's trial counsel; and John Skinder, the original prosecuting attorney.

Aguirre testified that when he originally met with Steele, Aguirre told Steele that he would not take any deal that would get him dismissed from the military (felony, domestic violence, or sex offenses). Aguirre also stated that Steele told him the maximum sentence for his crimes was somewhere in the range of 70 months. At some point Aguirre began to change his mind and decided that if the State made a good offer he would take it, even if it would mean his discharge from the military. He supported this statement with a letter he wrote to defense counsel containing the following statement:

> So just know if you get a deal some time between now and trial and you feel it is in my best interests, take it, I will.

1 Report of Proceedings (RP) at 150. But even after Aguirre decided that he would take a deal even if it would get him discharged from the military, he was still unwilling to admit to committing the crime.

Aguirre testified that he never saw the plea offer the State made and Steele did not tell him about it. Aguirre testified that after Christmas, Steele discussed an offer of possibly 48 to 58 months.

Steele testified that he recalled having "extensive discussions about the case, the plan of defense, and discussed offers and that type of thing" but he could not recall specific dates and times of the conversations. 1 RP at 116. Based on Steele's recollection, Aguirre was very

4

adamant about his innocence and his desire to go to trial. Steele admitted that while he informed Aguirre of the plea offer the State made and explained the offer to Aguirre, he did not push him to take the offer because it would not keep him in the military and he believed that Aguirre had a good case to take to trial. Specifically Steele testified,

> Aguirre was . . . kind of a "damn the torpedoes, full speed ahead" kind of guy. He was very adamant he did not commit a crime; he did not commit the crimes he was accuse [sic] of; and he was not about to plead to anything where he would have to admit that he did do, did commit these crimes.

1 RP at 119. Steele explained that, in context, Aguirre's letter meant a deal that would keep him in the military because, at the time, Aguirre believed staying in the military was in his best interest.

Steele reviewed the standard sentencing ranges for offenses prior to meeting with his client or discussing plea offers. Steele also explained that if a crime carries an indeterminate sentence, the defendant is subject to the maximum sentence and can be released by the Indeterminate Sentence Review Board after serving the minimum term. But Steele could not specifically remember the substance of conversations he had with Aguirre or whether he specifically explained indeterminate sentencing.

Skinder, the original prosecuting attorney on Aguirre's case, testified that, at Steele's request, he made one plea offer. Furthermore, there would not have been a plausible plea offer of 40 to 50 months in prison and, based on the charges, it would have been extraordinarily difficult to calculate Aguirre's standard sentencing range around 70 months. Skinder also testified that when he made the offer to Steele, he "made it clear to [Steele] that that was the

5

offer and, if it was not accepted in all regards, it was rejected." 2 RP at 216-17. The plea offer was not an *Alford*[3] plea.

Following the reference hearing, the trial court issued written findings of fact and conclusions of law. The trial court found that (1) Steele's testimony was more credible than Aguirre's; (2) Steele conveyed the plea to Aguirre; and (3) Steele explained the consequences of the plea offer, including the potential sentence if Aguirre was convicted at trial. Based on the findings of fact, the trial court determined that Aguirre did not meet his burden of proving by a preponderance of the evidence that the State's plea was not adequately conveyed to him.

The trial court also made oral findings. In its oral findings, the trial court determined that Aguirre had been clear, even at sentencing, that he believed staying in the military was in his best interest. Furthermore, the trial court stated,

> And while the difference between a potential maximum sentence versus a 14 month determinate sentence may seem in hindsight to be such an obvious difference that Mr. Aguirre should have taken that, for the reasons I've already stated, that is only speculation, and it's really something that has to be resolved by every defendant in their particular case.

2 RP at 265.

LAUGHMAN'S SUBSEQUENT TESTIMONY

In 2007, the military held Aguirre's separation hearing, a hearing to determine whether Aguirre would be discharged from the military. Laughman also testified at this hearing. Laughman testified that toward the end of the relationship, Aguirre would not let her "hang out" with her friends and would become aggressive with her if she wanted to go out. McCloud Decl.

---

[3] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

No. 41556-9-II

App. H, at 22. During cross-examination, Laughman testified that both she and Aguirre wanted to break off the relationship at the time the rape occurred.

She also testified that she told Deputy Carter of the Thurston County Sheriff's Office that the bruises on her body were from Aguirre. However, she also told Carter that they were practicing self-defense and she did not want to file a report. Laughman never reported the rape to Carter.

## ANALYSIS

### PLEA OFFER

In his supplemental briefing, Aguirre assigns three errors to the trial court's findings of fact and conclusions of law: (1) the trial court erroneously interpreted the meaning of "determinate-plus" sentencing and, based on that interpretation, erroneously determined that the State's plea offer was adequately conveyed; (2) the trial court erred by refusing to admit expert testimony regarding standard practice for conveying a plea offer; and (3) the evidence was insufficient to support the trial court's conclusion that Steele adequately conveyed the plea offer to Aguirre. Although Aguirre challenges the sufficiency of the evidence establishing that the plea offer was adequately conveyed to him, he is also required to show prejudice. Aguirre has failed to demonstrate that there was a reasonable probability that he would have accepted the State's offer. Accordingly, Aguirre has failed to demonstrate prejudice and his ineffective assistance of counsel claim fails.

After a reference hearing on an ineffective assistance of counsel claim, we review findings of fact for substantial evidence and the trial court's conclusions of law are reviewed de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873-74, 16 P.3d 601 (2001).

7

To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "In a plea bargaining context, 'effective assistance of counsel' merely requires that counsel 'actually and substantially [assist] his client in deciding whether to plead guilty.'" *State v. Osbourne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (alteration in original) (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901, *review denied*, 96 Wn.2d 1023 (1981)). Defense counsel must inform the defendant of all the direct consequences of the guilty plea. *State v. A.N.J.*, 168 Wn.2d 91, 113-14, 225 P.3d 956 (2010). In the context of a claim that counsel's ineffective assistance caused the defendant to reject a plea offer, a defendant demonstrates prejudice by showing that there is a reasonable probability he or she would have accepted the offer absent counsel's ineffective assistance. *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012); *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1409, 182 L. Ed. 2d 379, *cert. denied*, 132 S. Ct. 1789 (2012). If a defendant cannot demonstrate either deficient performance or prejudice, the ineffective assistance of counsel claim fails. *Strickland*, 466 U.S. at 697.

The trial court determined that Aguirre's claim that he would have accepted the deal was based on hindsight. Steele's testimony at the reference hearing supports this. Steele testified that Aguirre was adamant that he was innocent of the charges, he wanted to go to trial, and he would not accept a deal that would result in his removal from the military. The trial court found that Steele's testimony was more credible than Aguirre's. "[A] trial court's determination of a witness's credibility cannot be disturbed on appeal." *In re Pers. Restraint of Davis*, 152 Wn.2d

647, 682-83, 101 P.3d 1 (2004) (citing *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 410-11, 972 P.2d 1250 (1999)). Accordingly, Steele's testimony is substantial evidence supporting the trial court's finding that Aguirre would not have accepted the deal at the time it was made.

Furthermore, Aguirre's own testimony belies his assertion that he would have accepted the State's offer. Aguirre testified that even after he decided he would be willing to accept a plea bargain that would result in his separation from the military, he would not have accepted an offer that required him to admit to committing the crimes. In fact, Aguirre maintained his innocence throughout trial and sentencing. The State's offer was not an *Alford* plea, therefore to accept the offer, Aguirre would have had to admit he committed the crime. The State's offer was a one-time, nonnegotiable offer. Aguirre's insistence on maintaining his innocence equated to a rejection of the State's offer, even assuming he would have accepted terms that would result in his separation from the military.

Based on the above facts, we conclude that Aguirre has not demonstrated there was a reasonable probability that he would have accepted the State's offer. Aguirre has failed to meet his burden to show prejudice. Accordingly, his ineffective assistance of counsel claim fails, regardless of whether defense counsel was deficient.

Aguirre also argues that the trial court erred by refusing to allow Aguirre's expert to testify at the reference hearing. We review a trial court's decision to admit expert testimony for an abuse of discretion. *State v. Willis*, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Under ER 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

To be admissible under ER 702, expert testimony must be helpful to the trier of fact. *State v. McPherson*, 111 Wn. App. 747, 761, 46 P.3d 284 (2002).

Here, Aguirre sought to admit the testimony of another defense attorney to testify about what would have constituted effective assistance of counsel when conveying the plea offer in this case. According to Aguirre, the expert could have explained "the standard of care required of competent counsel when the charges carry a determinate-plus sentence of *life* and the offer is a plea to a crime with a *guaranteed maximum 14-month determinate sentence*," and the expert could have "clarified the impact of [post traumatic stress disorder (PTSD)] on Steele's duty to transmit the plea offer." Suppl. Br. of Pet'r at 14-15. The trial court excluded Aguirre's expert for two reasons: (1) with 30 years of criminal law experience, the trial court did not need an expert to determine what should be told to a defendant to adequately explain a plea offer; and (2) the opinion went to whether counsel was ineffective not whether the plea offer was conveyed or explained—which was what we asked the trial court to determine. As the trier of fact in a reference hearing, the trial court is in the best position to determine whether an expert's testimony would be helpful to it. The trial court determined that, based on its knowledge and experience, Aguirre's expert would not be helpful. The trial court did not abuse its discretion by excluding Aguirre's expert's testimony.

NEWLY DISCOVERED EVIDENCE

Aguirre argues that Laughman's testimony at the military separation hearing is newly discovered evidence warranting a new trial. But the State correctly notes that Laughman's

No. 41556-9-II

testimony at the military separation hearing is, at best, impeachment evidence. We agree with the State.

> To obtain a new trial based upon newly discovered evidence, a defendant must prove that the evidence: (1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.

*State v. Macon*, 128 Wn.2d 784, 800, 911 P.2d 1004 (1996). Failure to establish any of the above factors precludes a new trial. *Macon*, 128 Wn.2d at 800 (citing *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)). "Impeachment evidence" is "[e]vidence used to undermine a witness's credibility." BLACK'S LAW DICTIONARY 637 (9th ed. 2009). A reliable recantation may generally be considered newly discovered evidence warranting a new trial. *Macon*, 128 Wn.2d at 799-800.

Here, Laughman's testimony at the military separation hearing was not a recantation. Laughman never testified that Aguirre did not assault or rape her. Aguirre asserts that the following inconsistencies in Laughman's testimony prove the testimony is newly discovered evidence:

> [Laughman] changed the amount of beers she had that night from "4 to 5" down to "2 to 3;" [Laughman] changed from denying that their fight-training was called anything like combatives, to admitting that. [Laughman] changed from saying she stayed on the couch to claiming she left immediately. [Laughman] changed whether she had a cigarette on the couch after sex, or not. [Laughman] changed whether she affirmatively told Officer Carter after the incident that she and [Aguirre] were practicing play-fighting. [Laughman] even changed her testimony about what [Aguirre] did to her. First, at trial, she testified that she was raped on the floor. Later, at the Separation Hearing, she claimed she was raped on the bed.
>
> Finally, at the trial, [Laughman] testified that Aguirre was jealous of her, trying to limit her outside contacts, and keep her for his own. . . . But later, at the Separation Hearing, she admitted that they "both" wanted to end the relationship.

11

No. 41556-9-II

Br. of Pet'r at 31-32. But minor inconsistencies regarding specific details are not equivalent to a recantation. Instead, they serve only to cast doubt on the credibility or accuracy of her testimony. Therefore, Laughman's testimony at the separation hearing is impeachment evidence. Accordingly, Aguirre has failed to meet his burden of demonstrating that Laughman's testimony at the military separation hearing is newly discovered evidence warranting a new trial.

MITIGATING EVIDENCE AT SENTENCING

Finally, Aguirre alleges that he received ineffective assistance of counsel at sentencing because his counsel failed to present mitigating evidence on his behalf. Specifically, Aguirre contends that his counsel should have presented evidence regarding Aguirre's military service or Aguirre's mental or social history, including his PTSD.

Aguirre is required to demonstrate both deficient performance and prejudice. *Strickland*, 466 U.S. at 697. Here, Aguirre cannot demonstrate how counsel's failure to offer his suggested mitigating evidence prejudiced him at sentencing. Aguirre argues that the lack of mitigating evidence prejudiced him because (1) the charges would have been reduced if mitigating evidence had been presented to the State prior to trial, and (2) the trial court would have imposed a standard range sentence if the mitigating evidence had been presented at sentencing.

Aguirre cannot offer anything other than speculation about how the failure to present evidence of his military service or mental or social history would have affected the length of the minimum sentence the trial court imposed. Aguirre has not cited any authority that supports the proposition that military service or the mental or physical effects of military service are a basis for imposing the low end of the sentencing range, or from departing from a standard range sentence altogether. *See* RCW 9.94A.535(1). Even if Aguirre had a basis for arguing that military service or the effects of military service justified a sentence at the low end of the

12

sentence range, the trial court sentenced Aguirre to a standard range sentence. Because Aguirre cannot demonstrate that the outcome of his sentencing would have been different if his proposed evidence had been presented, he has failed to meet his burden to show prejudice. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). A failure to demonstrate prejudice defeats a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

Aguirre has failed to meet his burden to show ineffective assistance of counsel for either failing to adequately convey a plea offer or failing to present mitigating evidence at sentencing. Furthermore, Laughman's testimony at the military separation hearing is merely impeaching and not newly discovered evidence. Accordingly, we deny Aguirre's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

PENOYAR, J.

WORSWICK, C.J.