IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>       v.<br><br>BENJAMIN JACK HOOVER,<br><br>               Appellant. | No. 87203-6-I<br><br>DIVISION ONE<br><br>OPINION PUBLISHED IN PART |

DÍAZ, J. — A jury of his peers convicted Benjamin Jack Hoover of two counts of possession of a controlled substance with intent to deliver. Police had discovered on his person and in his truck inter alia two different types of drugs—namely, 10 grams of methamphetamine and 50 fentanyl pills in a "larger" bag, which together had a combined total "street value" up to $800—and $200 in cash in various denominations. He now argues the evidence was insufficient to prove he, not only possessed the drugs, but intended to deliver them. Hoover also claims that he received ineffective assistance of counsel and the prosecutor committed misconduct. Disagreeing with the first claim and finding no reversible error as to the latter claims, we affirm, but remand to strike improperly assessed fees.

## I.     BACKGROUND

In June 2022, pursuant to an outstanding felony warrant, Sheriff's Deputy Eric Peterson was searching for Hoover and found him in a vehicle outside a grocery store. Deputy Peterson pulled behind the vehicle and identified Hoover in

the driver's seat based on a photograph Deputy Peterson reviewed on his way to the store. He ordered Hoover to put his hands on the steering wheel and to exit the vehicle. Deputy Peterson then placed Hoover in handcuffs and searched him.

Deputy Peterson found in one of Hoover's sweatshirt's pockets a pipe used to ingest narcotics and a piece of aluminum foil with black residue on it. In another pocket, the deputy found a plastic bag with a white crystal substance, later confirmed to be methamphetamine. The search also uncovered $200 in cash. In addition, Deputy Peterson saw a second pipe in the front passenger area of the vehicle and pieces of metal foil balled up in the back seat. He briefly spoke with a woman who had been sitting in the passenger seat and transported Hoover to jail.

The police subsequently impounded Hoover's vehicle and obtained a warrant to search it. That search led to the discovery of a plastic bag behind the driver's seat containing pills later confirmed to contain fentanyl.

The State charged Hoover with two counts of possession of a controlled substance with intent to deliver, methamphetamine and fentanyl respectively. At trial, Deputy Peterson testified, as did another deputy who had observed the arrest, Matthew Turnidge, to the facts above.

Both deputies also opined that, from their experience, Hoover possessed a larger quantity of drugs than associated with personal use. And they testified that some other characteristics of the items found provided circumstantial evidence that Hoover intended to deliver the drugs, including the variety and "street value" of the drugs and the size of the bag in which the pills were found.

In addition, the State elicited testimony, which it reiterated during closing,

2

that the deputies had been searching for Hoover because he had a felony warrant; that Peterson had feared Hoover was armed; and that Hoover lacked stable housing, employment, and income.

The jury convicted Hoover as charged and he timely appeals.

## II.    ANALYSIS

### A.    Sufficiency of the Evidence

Hoover concedes that he possessed the drugs in question, but claims his convictions rest on insufficient evidence as to his intent to deliver them to a third person.  We disagree.

#### 1. Standard of Review

We review sufficiency challenges for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt.  State v. Brockob, 159 Wn.2d 311, 336, 150 P.3d 59 (2006).  Such claims admit the truth of the State's evidence and all reasonable inferences drawn from it.  State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  And when analyzing sufficiency, we treat circumstantial evidence to be as reliable as direct evidence.  State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

We must also defer to the trier of fact with respect to witness credibility, conflicting testimony, and the persuasiveness of evidence.  State v. Rafay, 168 Wn. App. 734, 843, 285 P.3d 83 (2012).  Overall, the standard of review for sufficiency claims is "deferential" to the jury's decision on such questions.  In re Pers. Restraint of Martinez, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).  "The

3

criterion impinges upon a jury's discretion only to the extent necessary to protect the constitutional standard of reasonable doubt." State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). "This inquiry does not require the reviewing court to determine whether *it* believes the evidence at trial established guilt beyond a reasonable doubt." Id. (emphasis added). Instead, again, "on review the proper test is whether there was sufficient evidence to justify a *rational* trier of fact to find guilt beyond a reasonable doubt." Id. at 220 (emphasis added).

2. Substantive Law

RCW 69.50.401(1) declares that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or *deliver*, a controlled substance." (Emphasis added.) To "deliver" means to "transfer from one person to another." RCW 69.50.101(a)(17).

Washington courts, including this one, have held that to be convicted under this statute—as opposed to simple possession of a controlled substance under, e.g., RCW 69.50.4013—"the inference of an intent to deliver" must be based on more than "'bare possession of a controlled substance, *absent other facts and circumstances*.'" State v. Brown, 68 Wn. App. 480, 483, 843 P.2d 1098 (1993) (quoting State v. Harris, 14 Wn. App. 414, 418, 542 P.2d 122 (1975)) (emphasis added). In Brown, after reviewing the then-extant cases which involved a variety of quantities of various drugs, this court held that "Washington cases where intent to deliver was inferred from the possession of a quantity of narcotics all involved *at least one additional factor*." Id. at 484 (emphasis added).

In our recent survey of the caselaw since Brown, the legal requirement, at

its clearest, continues to be that convictions for possession with intent to deliver "require *substantial corroborating evidence* in addition to the mere fact of possession." Brown, 68 Wn. App. at 485 (emphasis added). This is so because "courts must be careful to preserve the distinction and not to turn every possession of a *minimal amount* of a controlled substance into a possession with intent to deliver without substantial evidence as to the possessor's intent above and beyond the possession itself." Id. (emphasis added).

In Brown, the defendant had one type of drug (crack cocaine), no "substantial sum of money," and no inculpatory packaging, such as separate packaging of the drugs. Id. at 484. The officer's testimony in support of the inference of intent to deliver amounted to nothing more than (a) the defendant was in "a high narcotics area" and (b) the amount of drugs was "definitely in excess of the amount commonly possessed for personal use." Id. at 484-85. Summarizing, this court held that Brown was a "naked possession case." Id. at 484. The court rejected both arguments.[1]

This court rejected the latter argument, holding that the "State's position would mean that any person possessing a controlled substance in an amount greater than some experienced law enforcement officer believes is 'usual' or 'customary' for personal use is subject to conviction for possession with intent to deliver." Id. at 485. We rejected that argument, as courts had before and have since. See, e.g., State v. Cobelli, 56 Wn. App. 921, 925, 788 P.2d 1081 (1989)

---

[1] This court also noted that the defendant had no weapon, no scales or other drug paraphernalia indicative of sales or delivery, and was one block from home, the last of which undercut the former argument. Brown, 68 Wn. App. at 484.

5

(holding that "[m]ere possession, without more, does not raise an inference of the intent to deliver," specifically where the factual "circumstances observed by the officers are no more indicative of an intent to deliver than they are of mere possession"); State v. Hutchins, 73 Wn. App. 211, 217, 868 P.2d 196 (1994) (holding that an "officer's opinion of the quantity of a controlled substance normal for personal use" *alone* is insufficient to establish intent to deliver).[2]

However, in no case have we held that a jury is categorically forbidden from either (i) considering the quantity, type, and composition of drugs which were found in a defendant's possession, even if derived from an officer's non-opinion testimony, or (ii) giving *any* weight to an officer's opinion about what was found, because "the jury is entitled to weigh *all the circumstances* and may infer from them an intent to deliver 'even though the quantity of drugs seized is consistent with personal use.'" State v. Zunker, 112 Wn. App. 130, 136-37, 48 P.3d 344 (2002) (quoting Stanley v. Commonwealth, 12 Va. App. 867, 407 S.E.2d 13, 15 (1991)) (emphasis added).[3]

That is, we have held that specific intent to deliver "must logically follow as

_____

[2] Somewhat similarly, we have held that a defendant's consciousness of guilt is insufficient to support an inference of an intent to deliver, where there is no additional evidence generally and no additional evidence specifically that his consciousness of guilt was related to the possession of drugs *with intent to deliver* rather than simply to possessing the drugs. State v. Hagler, 74 Wn. App. 232, 236, 872 P.2d 85 (1994). Nothing in this opinion relies on any behavior or statements Hoover may have made reflecting consciousness of guilt.

[3] The specific holding in Zunker was that "a large quantity of drugs is [not] an essential requirement, only that some additional factor suggestive of a sale is required for corroboration" as quantity is "*but one of many factors* to be considered in determining whether possession was for sale or delivery, or for personal use.'" 112 Wn. App. at 136-37 (quoting Commonwealth v. Ramos, 392 Pa. Super. 583, 595-96, 573 A.2d 1027, 1034 (1990)) (emphasis added).

a matter of probability" from all of the particular facts and circumstances because "[c]onvictions for possession with intent to deliver are highly fact specific." State v. Davis, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). We have explained:

> Certainly, an intent to deliver might be inferred from an exchange or possession of significant amounts of drugs or money. And there are also *a variety of other circumstances* which, *taken together* with possession of a controlled substance, lead to the conclusion that possession was with the intent to deliver.

Id. at 594-95 (emphasis added) (footnotes omitted).[4]

Accordingly, in each preceding decade over the last nearly 50 years, this court has determined that various combinations of particular facts—which, we acknowledge, have often *but not always* included items such as large amounts of cash or paraphernalia used for sales—provided adequate circumstantial evidence to infer an intent to deliver drugs. See, e.g., State v. Simpson, 22 Wn. App. 572, 572-73, 575-76, 590 P.2d 1276 (1979) (after enumerating the discovery of paraphernalia associated with drug use, three types of drugs, a pie tin with lactose and balloons, holding there was sufficient evidence of such intent based on "the quantity of uncut heroin" and officers' testimony that balloons and lactose are

---

[4] Our esteemed colleague in dissent criticizes the majority for failing to address the two footnotes accompanying this quoted excerpt. Dissent at 9-10. None of the cases cited in those footnotes change the meaning of the important quoted language above. More substantively, the dissent then claims that "[n]either Davis nor any of the cases Davis cites stand for the proposition that pieces of circumstantial evidence that, alone, are insufficient to support a conviction for intent to deliver, could nonetheless support such a conviction when taken together." Id. at 10. That may be true, but that is not the situation here. As discussed below, the jury heard six pieces of objective evidence and three types of officers' opinion testimony, only one of the latter of which has been held to be insufficient on its own to sustain a conviction. Those undisputed facts comprise the "variety of other circumstances" presented and "taken together" in this case. Davis, 79 Wn. App. at 594-95.

7

commonly used for the sale of drugs); State v. Lane, 56 Wn. App. 286, 297-98, 786 P.2d 277 (1989) (holding that cocaine "worth about $1,000," a "large amount of cash," and a scale were sufficient for a jury to infer that the defendants were dealing); State v. Taylor, 74 Wn. App. 111, 123-24, 872 P.2d 53 (1994) (holding that three types of drugs, "baggies, scales and a large amount of cash" was sufficient for the jury to infer intent to deliver all three types of drugs); State v. Campos, 100 Wn. App. 218, 219-20, 223-24, 998 P.2d 893 (2000) (after listing the discovery of a "large" amount of undiluted cocaine in various forms, a "substantial sum of money" "in small denominations," now-standard electronics, and a one word note, but "[n]o scales, other bags, bindles or other drug paraphernalia," holding that the evidence was sufficient because "the jury resolves contradictory evidence by making credibility determinations. We do not redecide credibility determinations."); State v. Hotchkiss, 1 Wn. App. 2d 275, 277, 404 P.3d 629 (2017) (holding that "the quantity of the methamphetamine combined with the amount of cash in Hotchkiss's possession provided sufficient corroborating evidence of intent to deliver independent of Hotchkiss's incriminating statement").[5]

Moreover, we have also consistently held that "all the evidence presented" in support of an intent to deliver need not "exclude every reasonable hypothesis consistent with innocence." Zunker, 112 Wn. App. at 137-38. Rather, again, the evidence must provide "corroborating circumstances" to infer the intent to distribute, viewed "in the light most favorable to the prosecution." Id. at 138, 135.

---

[5] Hoover suggests that Hotchkiss is wrongly decided. We disagree as it is in line with decades of precedent, which looks at the constellation of circumstances, and rarely draws bright lines, as Hoover wishes for us to do here.

As long as a rational trier of fact could have found intent to deliver beyond a reasonable doubt, "a trier of fact properly may rely on circumstantial evidence alone, *even if it is also consistent with the hypothesis of innocence*." State v. Kovac, 50 Wn. App. 117, 119, 747 P.2d 484 (1987) (emphasis added).

Finally, our Supreme Court has reiterated these principles and rejected a bright line rule—such as one urged by the defense "that a sizeable amount of drugs must be a starting point in any analysis of intent to deliver"—holding that, "[e]ven though evidence may be consistent with personal use, it is the duty of the fact finder, not the appellate court, to weigh the evidence." State v. Goodman, 150 Wn.2d 774, 782-83, 83 P.3d 410 (2004). In short, although certain types of evidence may be insufficient *on their own*, i.e., in the absence of *any* other evidence, a "jury [i]s entitled to look at all the evidence presented and draw its own conclusion about whether" a defendant intended to deliver controlled substances. Zunker, 112 Wn. App. at 137-38.

3. Discussion

Here, Hoover argues that a rational jury could not infer that he intended to deliver the drugs because—in his summary of the evidence—"[b]esides police testimony that the amount of drugs in Mr. Hoover's possession constituted more than single use, the State's other evidence supporting intent to deliver was $200 cash in his pocket." We disagree factually and legally.

Factually, the jury heard objective evidence—not based on the officer's opinion—that, not only did Hoover possess $200, but that the cash was comprised of two denominations as follows: a $100 bill and five $20 bills. Legally, the fact

that they were in various denominations is an appropriate fact for the jury to consider, as in Campos. 100 Wn. App. at 219-20. And it is for the jury to decide whether that is a "large" or "substantial" sum, which was absent in Brown, 68 Wn. App. at 484, but found in Lane, 56 Wn. App. at 297-98, Taylor, 74 Wn. App. at 123-24, and Hotchkiss, 1 Wn. App. 2d at 285-86. What may be an usual combination or notable sum of cash in this electronic or any age varies and, in our republic, a jury may "draw its own conclusion" about its probativeness. Zunker, 112 Wn. App. at 137-38.[6]

Factually, the jury also heard objective evidence—not based on the officer's opinion—that Hoover possessed, not simply a "relatively small amount" of drugs as in Cobelli, 56 Wn. App. at 924 (1.4 grams), but was found with 10 grams of crystal meth and with 50 fentanyl pills, in separate receptacles. Legally, it is for the jury to decide whether this constituted a large quantity of drugs, and whether it

---

[6] Our esteemed colleague in the dissent does not appear to disagree with our description of this particular piece of evidence or any of the other objective facts enumerated here. Instead, the dissent believes that the State asked the jury to infer that, because "Hoover was poor and unhoused, . . . the $200 found on his person was evidence of his intent to deliver drugs." Dissent at 2. And she concludes that she "cannot endorse such an unsupported inference as a reasonable one sufficient to support Hoover's convictions." Id. As explained further below, it would be impermissible to elicit testimony or argue that poor and unhoused people are more likely to commit crimes than rich people with housing. But we do not believe that is a proper understanding of the State's argument and, indeed, Hoover himself does not include such a claim in his prosecutorial misconduct assignment of error. And, even if it were the State's argument, we do not endorse or rely on such an inference to resolve the sufficiency of the evidence claim. Perhaps most tellingly, a jury could consider a defendant's possession of $200 in cash in the denominations found probative of guilt, regardless of their housing or economic status. And that is how we consider that evidence: one piece of evidence set among the constellation of other evidence, regardless of what the State argued.

10

is pertinent that there were multiple types of drugs discovered, as the jury heard in Brown, 68 Wn. App. at 484, Simpson, 22 Wn. App. at 572-73, Zunker, 112 Wn. App. at 136-37, Taylor, 74 Wn. App. at 123-24, Campos, 100 Wn. App. at 219-20, and Hotchkiss, 1 Wn. App. 2d at 285-86.

Likewise, the fact that the drugs were separately packaged is an additional appropriate fact for the jury to consider as it may be inculpatory, as noted in Brown, 68 Wn. App. at 484, and held in Taylor, 74 Wn. App. at 123-24. And, the jury heard evidence that another person had been sitting in Hoover's truck with him, near where a second pipe used for ingesting drugs was found.

When "taken together," we hold that a rational jury could conclude that it "logically follow[s] as a matter of probability" from these six objective "circumstances"—namely, the amount and composition of the cash, and the amount and variety of the drugs, in separate packaging, next to another person—that Hoover had the "intent to deliver" the drugs to a third person. Davis, 79 Wn. App. at 594-95. A rational jury could have found, for example, that it was a large amount of cash in peculiar denominations and that it was a large amount of drugs, suspiciously varied, in inculpative packaging. The question is not whether we, the reviewing court, "believe" the evidence at trial established guilt beyond a reasonable doubt, but whether "any rational jury could have." Green, 94 Wn.2d at 221. We cannot conclude that only an irrational jury would so conclude on these facts.

Moreover, the evidence before the jury also included officers' opinion testimony, which built off or interpreted some of these objective facts. Specifically,

11

the deputies testified further as to their understanding of (1) the street value of the drugs and what it meant that Hoover was carrying multiple types of drugs, (2) the meaning of the packaging in which at least one of the drugs was found, and (3) whether the amount of drugs found on Hoover likely was only for personal use.

As to the first, Deputy Peterson testified that one gram of methamphetamine sold for $50 and one pill of fentanyl sold for between three and six dollars meaning the evidence before the jury was that Hoover possessed about $500 worth of methamphetamine and at least $150 worth of fentanyl and thus, in the officer's opinion, the drugs were worth at least $650 and up to $800. It is for the jury to decide whether to believe the officer and whether the economic value of the drugs is suggestive of intent to deliver. Rafay, 168 Wn. App. at 843. There is no case holding a jury cannot consider such testimony or holding that this type of testimony alone is insufficient for conviction. On the contrary, in Lane, 56 Wn. App. at 297-98, this court held that an officer's opinion that cocaine "worth about $1,000" supported the intent to deliver.

Deputy Peterson also testified that this was a "poly-drug" case, meaning that Hoover was "carrying multiple drugs," and he opined this was also an "indicator of someone that is distributing narcotics rather than someone that is using [for] personal use[.]" It is for the jury to decide whether to believe that the fact Hoover was carrying more than one type of drug mattered in that way. Rafay, 168 Wn. App. at 843

As to the second, Deputy Turnidge testified that, in his experience, people who personally use drugs usually "have a much smaller baggie, with a smaller

12

amount in the bottom of it," in comparison to the size of the bag with methamphetamine found in Hoover's pocket. In other words, he testified that the "clear plastic baggie [was] larger than what I typically see[.]" It is for the jury to decide whether to believe the size of the bag was probative of delivery. Rafay, 168 Wn. App. at 843. And again, there is no case holding a jury cannot consider such testimony or holding that this type of testimony alone is insufficient for conviction.

As to the third, Deputy Peterson testified that a "common amount" of methamphetamine "for personal use" would be "under a gram," and that "a personal use [of fentanyl] would be . . . about a pill a day" and when he conducted "a typical stop . . . that the person would be in possession of . . . [u]sually one, maybe two" pills. Deputy Peterson further testified that the amount of each of the drugs on Hoover's person were "more" than for personal use. This is the only portion of the officer's opinion testimony that would be insufficient to infer intent, if this were the only evidence other than possession.

But it is not the law that a jury may not *consider* an officer's opinions on such matters along with all the other evidence, or that, even if a case is built only on some combination of an officer's opinions on such matters—which this case was not—it is per se insufficient. The "jury is entitled to weigh all the circumstances and may infer from them an intent to deliver 'even though the quantity of drugs seized is consistent with personal use.'" Zunker, 112 Wn. App. at 137 (quoting Stanley, 407 S. E. 2d at 15).

It is also not the law that a conviction for intent to deliver must always

13

contain items clearly indicative of sales, like a scale. The defendant in Campos was not found with "scales, other bags, bindles or other drug paraphernalia." 100 Wn. App. at 220.

Taken together, we hold that the objective facts and the officers' various opinion testimony constitute "substantial corroborating evidence in addition to the mere fact of possession," from which a rational trier of fact could infer Hoover's intent to deliver. Brown, 68 Wn. App. at 485. It is true that some of these pieces of circumstantial evidence might not suffice—in isolation—to establish Hoover intended to deliver the controlled substances he possessed.[7] But our constitution demands that we afford our fellow citizens in an impartial jury the deference entrusted to it to "weigh the evidence" and "draw its own conclusion" about the persuasiveness of that evidence. WASH. CONST. art. I, § 22; Goodman, 150 Wn.2d at 783; Zunker, 112 Wn. App. at 137-38. That is a fundamental right of the accused.[8] WASH. CONST. art. I, § 22.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so

---

[7] For instance, we have held "the amount of methamphetamine alone" was insufficient to prove intent to deliver. State v. Sprague, 16 Wn. App. 2d 213, 230, 480 P.3d 471 (2021). But we have also held that "the fact that the amount of drugs is small should also not invalidate a jury verdict, provided corroborating circumstances are present." Zunker, 112 Wn. App. at 138.

[8] Contrary to the dissent's suggestion, we do not here hold that "a jury's decision is [] limitless and [may] be upheld when based on insufficient evidence." Dissent at 20. And we are not "simply rely[ing] on the principle that we should defer to a jury's determination as to the persuasiveness of the evidence." Id. at 21. There is an abundance of evidence here and, again, it is "the duty of the fact finder, not the appellate court, to weigh the evidence." Goodman, 150 Wn.2d at 783.

ordered.

B.     Ineffective Assistance of Counsel

Hoover next argues his counsel was ineffective for not objecting to three categories of evidence elicited during trial which we address in turn below. We conclude his counsel was deficient for not objecting to some, but not all, of the evidence and, ultimately, that Hoover does not demonstrate prejudice as necessary to warrant reversal.

A person accused of a crime has the right to the effective assistance of counsel. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 22; Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We review claims of ineffective assistance of counsel de novo. In re Pers. Restraint of Davis, 188 Wn.2d 356, 371, 395 P.3d 998 (2017). Ineffective assistance of counsel occurs when "counsel's performance was deficient" and the "deficient representation prejudiced the defendant." State v. Vazquez, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021).

An attorney performs deficiently when there is no legitimate strategic or tactical reason for his actions or inactions. Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). We have held that "[t]he decision of when or whether to object is a classic example of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662, 667 (1989). What's more, our Supreme Court has held that, "[i]f a defendant centers their claim of ineffective assistance of counsel

15

on their attorney's failure to object, then the defendant must show that the objection would likely have succeeded" to establish deficient performance. Vazquez, 198 Wn.2d at 248 (internal quotation marks omitted). Where an attorney deficiently fails to object to inadmissible evidence, reversal is only required if "the defendant can show the result would likely have been different without the inadmissible evidence." Id. at 248-49.

The first category of evidence Hoover argues his counsel should have objected to was testimony that, at the time of his arrest, he was subject to a warrant and may have been armed and dangerous. Specifically, as to the warrants, Deputy Peterson testified that the reason he had searched for Hoover was that he "was informed he had a felony warrant." Deputy Turnidge also already had testified that the reason he came into contact with Hoover was that "Hoover had current warrants." And Deputy Turnidge repeated that, after Deputy Peterson pulled Hoover from the vehicle, Deputy Peterson "advised [Hoover] that he was under arrest for felony warrants," plural.

As to the fear Hoover was armed, Deputy Peterson also testified that, prior to the arrest, he "had information that [Hoover] possibly was armed with a weapon." Deputy Peterson further testified that he twice instructed Hoover to put his hands on the steering wheel and to exit the vehicle because "he was doing something with his right hand." After complying for a moment, Deputy Peterson testified that he saw Hoover "move[] his hand down toward the right side of his body" and that Deputy Peterson was "afraid that maybe he was reaching for a weapon." No weapons were found on Hoover.

16

We hold that there was no legitimate strategic or tactical reason for Hoover's trial counsel not to object to the deputies' testimony that he had an outstanding warrant, or warrants, and that Peterson feared he was armed. We further conclude such objections would likely have been sustained.

Under ER 404(b), it is impermissible to admit evidence "of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Evidence that Hoover had an outstanding warrant or threatened to assault a law enforcement officer with a firearm are wrongful acts, and were not admitted under any permissible basis. Id. Moreover, to the extent that the State offered this evidence to explain how or why the officers came to interact with Hoover, i.e., res gestae, the probative value of this evidence is low and "substantially outweighed by the danger of unfair prejudice." ER 403. Either an ER 403 or 404(b) objection would have been sustained. Thus, Hoover's counsel's failure to object was deficient.

Nonetheless, Hoover has not proven prejudice, as is his burden. Vazquez, 198 Wn.2d at 248. Hoover provides no specific argument that this precise evidence served to prejudice him. Instead, Hoover chooses to conflate this argument with further alleged misconduct below. At most, Hoover argues the prosecutor "leveraged [each type of] inadmissible evidence to secure a conviction."

It is true that, during the State's closing argument, it twice stated that Deputy Peterson had been "concerned that [Hoover] might be armed" and was "concerned that [Hoover was] in possession of a weapon," and that the State asserted, although Deputy Peterson did not actually find a weapon, his fear was "absolutely

17

reasonable."

But Hoover has not shown that this evidence or argument was "central to the State's case" or that the outcome "would likely have been different" if his counsel had objected. Madison, 53 Wn. App. at 763; Vazquez, 198 Wn.2d at 248-49. The State began its closing argument, not with this evidence, but with his statement against his interest that the drugs in his pocket were going "to get [him] 14 months in prison"—to which Hoover does not assign error on any basis—before the State turned to the facts reviewed above: namely, possession of the drugs and cash. In the full context of even just the closing argument, we cannot say that there is a reasonable probability that Hoover's convictions would not have been secured without this evidence. State v. Tilton, 149 Wn.2d 775, 784, 72 P.3d 735 (2003). Hoover provides no argument specific to this evidence otherwise.

The second category of evidence Hoover asserts his counsel should have objected to was the deputies' use of the term "Mexi pills." Deputy Peterson used that term three times to refer to the fentanyl pills discovered in Hoover's truck, once on cross examination.

We conclude that it was deficient not to object to testimony using a word conveying an ethnic stereotype, and that an objection would likely have been sustained. See In re Pers. Restraint of Skone, 30 Wn. App. 2d 1, 37-39, 543 P.3d 842 (2024) (concluding the State impermissibly employed stereotypical or harmful references to an ethnicity which was tied to gang-membership related to the case, but whose heritage the defendant did not himself share). The word had no apparent probative value as there was no question about the nature of the pills

18

discovered, and any possible value would have been low and outweighed by the danger of unfair prejudice and confusion of the issues under ER 403.

Nonetheless, Hoover has not shown that these statements were "central to the State's case" or that the outcome "would likely have been different" if his counsel had objected. Madison, 53 Wn. App. at 763; Vazquez, 198 Wn.2d at 248-49. The State did not refer to the term in closing argument and the statements were made in such passing during the testimonial phase of trial that we cannot say that there is a reasonable probability that Hoover's convictions would not have been secured without those few statements. Tilton, 149 Wn.2d at 784. On a fulsome review of the transcript, there is simply no evidence that the State "impermissibly" or otherwise "inject[ed] race into the proceeding," as Hoover claims.

The third and final category of evidence Hoover argues his counsel should have objected to was testimony suggesting Hoover was homeless or unemployed, which together, he claims, "urged the jury to find his poverty made it more likely he was guilty." We disagree because Hoover has not shown that the objection would have been sustained and, even if it had, that the outcome of the trial likely would have been different.

At trial, the State asked Deputy Peterson where he had searched for Hoover. Specifically, the State asked Deputy Peterson, first, if he had gone to Hoover's residence. Deputy Peterson responded that he had not because "[t]raditionally he's -- we don't know where he's staying" and "he doesn't really have a fixed residence." The State, second, asked Deputy Peterson if he went to

19

Hoover's place of employment to try to find him, to which Deputy Peterson responded, "No . . . I don't know that he even has a job. I don't know where he works." That was the totality of this evidence on either point.

Hoover argues this testimony was irrelevant and prejudicial under ER 403, averring that "[h]ad Mr. Hoover's counsel objected, the court would have excluded it."[9]

We have indeed held that it would be impermissible to elicit testimony or argue that poor people are more likely to commit crimes than rich ones. See State v. Matthews, 75 Wn. App. 278, 286, 877 P.2d 252 (1994). However, we disagree with the contention that Deputy Peterson's testimony (a) amounted to such a statement or (b) had little to no purpose which was substantially outweighed by any undue prejudice.

Deputy Peterson testified, based on his personal knowledge, that Hoover may or may not have a fixed residence and Deputy Peterson does not know if Hoover works. This is far from the impermissible contention which we have disavowed, that "poor people are [] more likely to steal than are people of higher income levels." Id.

Moreover, as becomes clear in closing arguments, the State elicited the testimony in anticipation of Hoover's own argument in closing that "it's way more likely that the cash was on hand so that groceries could be obtained and later put into the truck," and otherwise no one knew "where [the cash] came from" and it

---

[9] Hoover argues that this testimony was also impermissible under ER 404(b) but nowhere explains why being destitute is a wrong or bad act under that rule. We need not consider this undeveloped argument.

20

was mere "assumptions" to conclude the cash "had something to do with some kind of drug operation". In other words, Hoover has not disproved, as is his burden, that the State elicited that testimony to foreclose such an argument, which is a legitimate purpose. Vazquez, 198 Wn.2d at 248.

Further, the State's closing argument was consistent with this purpose. After noting that Hoover was found with $200 of "unexplained money," it asked rhetorically, "[H]ow's a person with no fixed residence, no known job or way of lawfully obtaining money, receive $200[?] How does he obtain . . . $500 worth of methamphetamine . . . [and] 50 pills of fentanyl, [worth] $150[?]" The State then immediately asked the jury to infer, from the large combined monetary value of the cash and drugs, that Hoover possessed "more drugs than he needs for his personal use because it's also to obtain money. And Mr. Hoover, like all of us, needs money. He needs to eat. He's at the grocery store. And how does he do that?" In this way, as in Matthews, "the focus of the evidence was not on poverty, but rather on" building the circumstantial case for why the quantity of drugs was for delivery and not mere personal use. 75 Wn. App. at 286.

The State later acknowledged that $200 was an amount of money the jurors might have had in their pockets, but it commented that they "likely ha[d] an employment or a source, a legitimate source of income. Unknown if Mr. Hoover has such a thing. Law enforcement certainly doesn't think so." It then asked again, "So where did the $200 come from. Was this from the sale – of some of the drugs already?" It recognized that "[w]e don't have that information," but it argued the jury did not need such direct evidence, given the overall circumstantial evidence

21

the State had just reviewed.

We hold that the State's use of Deputy Peterson's testimony about Hoover's residence and job, as in <u>Matthews</u>, "was sufficiently limited so that any stigma of . . . poverty was not made a point of primary focus for the jury." 75 Wn. App. at 286. The State's argument in great measure turned back to the quantity, variety and value of the drugs and the quantity of cash found in his possession, i.e., the merits of the case.

At a minimum, the State's closing argument did not overtly or implicitly urge the jury to make the impermissible, categorical inference that poor people are more likely to commit crimes than rich ones, as prohibited in <u>Matthews</u>, which is the only case Hoover cites in support of his argument. Thus, Hoover has also not shown an objection to the State's reference to Peterson's testimony in closing argument would have been sustained, so he has not established deficient performance. <u>Vazquez</u>, 198 Wn.2d at 248.

Even if the testimony had been improperly elicited or the argument improperly made, Hoover does not explain how the testimony and argument were central to the State's case in chief, which centered around the circumstantial evidence reviewed above, or why the outcome of the case "would likely have been different." <u>Id.</u> at 248-49. Hoover's entire analysis is comprised of two conclusory paragraphs. <u>State v. Elliott</u>, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

Finally, to the extent Hoover separately argues there was no factual support for Deputy Peterson's testimony, the question of what basis he had for his sworn

assertion is a question of the proper weight to afford his testimony, which we do not assess. Rafay, 168 Wn. App. at 843.[10]

### C. Prosecutorial Misconduct

Hoover next argues, in the alternative, that the State committed prosecutorial misconduct by eliciting and using in closing argument those three same categories of evidence. We again disagree.

In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). The defendant must establish impropriety and prejudice in the context of the entire record and the circumstances at trial. State v. Koeller, 15 Wn. App. 2d 245, 260, 477 P.3d 61 (2020). Where, as here, counsel does not object to a prosecutor's claimed misconduct at trial, the claim is waived unless the conduct is "so flagrant and ill-intentioned that it cause[s] an enduring and resulting prejudice that could not have been neutralized by a curative instruction" to the jury. Id. (internal quotation marks omitted). That said, misconduct that flagrantly or intentionally appeals to racial bias is per se prejudicial, requiring reversal. State v. Zamora, 199 Wn.2d 698, 715,

---

[10] Hoover also argues in passing that his counsel was deficient for not objecting to what he claims was inappropriate burden shifting. It is impermissible to shift the burden by asserting the defense failed to offer another reasonable explanation for evidence. State v. Osman, 192 Wn. App. 355, 367, 366 P.3d 956 (2016). Id. But here, the State simply noted the absence of evidence explaining the source of the $200 while asking the jury to make an inference on the circumstantial evidence. And we have held prosecutors have "wide latitude to comment on the evidence introduced at trial." Id. at 367. Thus, Hoover has likewise not shown an objection based on burden shifting would likely have been sustained. Vazquez, 198 Wn.2d at 248.

512 P.3d 512 (2022).

As to the first and third arguments, Hoover asserts that the State committed misconduct by eliciting and using testimony that he was "armed" and "dangerous," and about "Hoover's unemployment and housing instability." Because counsel did not object below, Hoover must establish inter alia that no curative instruction could have cured either such testimony. Hoover devotes one conclusory sentence across two briefs in support of his position, stating only that "[n]o instruction could have cured this misconduct as it was the heart of the prosecutor's case, used to overcome the lack of evidence." And Hoover nowhere explains why the jury would not have heeded, instead, the court's instructions that the "lawyers' statements are not evidence" and the jury must reach its decision "based on the facts prove[n]" and "not on sympathy, prejudice, or personal preference." Such a vacuous claim does not warrant our consideration. Elliott, 114 Wn.2d at 15.

Finally, Hoover argues that the State committed misconduct by eliciting the deputies' use of the term "Mexi Pills" and that Hoover need not establish prejudice because such conduct is per se prejudicial. Citing Zamora, 199 Wn.2d at 715. While the latter is true as it goes, we must first determine whether a race-based comment was an "apparently intentional" appeal to the jury's potential racial bias. State v. Bagby, 200 Wn.2d 777, 793, 522 P.3d 982 (2023).

Here, although the deputies used a term similar to the one in State v. Ibarra-Erives, 23 Wn. App. 2d 596, 607, 516 P.3d 1246 (2022), the prosecutor never elicited the term, and never repeated it. On this record, where the State never solicited, lingered on, or employed the stereotypical ethnic reference, where

24

Hoover has no apparent connection to a Latinx heritage or identity, and where there is no apparent relation between those terms and the charges, he has not shown that a reasonable objective observer could view the deputies' testimony as an apparently intentional appeal by the State to the jury's potential racial bias. Zamora, 199 Wn.2d at 718. Thus, this claim fails.

D.    Victim Penalty Assessment

Hoover's judgment and sentence imposed a victim penalty assessment (VPA).[11] Hoover now requests that we remand for the trial court to strike this legal financial obligation. The State concedes the matter should be remanded for that purpose if Hoover is indigent. We accept the State's further concession that there is information in the record to establish his indigency and we remand for the trial court to strike the VPA in accordance with RCW 7.68.035(4).

III.    CONCLUSION

We affirm Hoover's convictions but remand this matter to the court solely to strike the VPA from his judgment and sentence.

Díaz, J.

I CONCUR:

Feldman, J.

---

[11] Formerly, RCW 7.68.035(1)(a) mandated a $500 victim penalty assessment for all adults found guilty in superior court of a crime. State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016). In 2023, our legislature amended RCW 7.68.035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts are required to waive VPAs imposed prior to the 2023 amendments, on the offender's motion. Id.; RCW 7.68.035(5)(b).

<u>State v. Hoover No. 87203-6-I</u>

Coburn, J. (dissenting) — Benjamin Hoover and a female passenger were parked outside of a grocery store. Police did not witness any drug use or exchange of drugs or money. They arrested Hoover on an outstanding warrant and found on him a used tooter pipe, aluminum foil with black residue, a bag with 10 grams of methamphetamine, and $200 cash (a single $100 bill and five $20 bills). Behind the driver's seat was a bag of 50 pills that tested positive for fentanyl. Police also found another tooter pipe on the front passenger side of the vehicle tucked underneath a purse, and pieces of aluminum foil. Police did not find a scale, any type of ledger of sales, or any items that could be used to repackage and distribute drugs. What remained were, as one officer described, "normal things that you find that people will have in their vehicles."

Whether the evidence sufficiently supports a conviction of possessing drugs or possessing with intent to deliver those drugs was obviously contemplated by the jury who asked during deliberations, "Defendant said twice, 'that's another 14 months.' Is there a specific sentence for possession or possession with intent to deliver that matches or is appropriate to 14 months." Hoover did not testify at trial, but the State introduced these statements that he made after deputies pulled out the aluminum foil and the crystal methamphetamine from his pockets. The State opened its closing argument stating, "[t]his case can initially be summed up in – 'That's gonna get me 14 months in prison.' That was Mr. Benjamin Hoover's first response before he had an opportunity to craft a defense and to consider the ramifications of what he was saying. That is – admission." The parties agreed to simply have the court generally refer the jury

to their instructions. On the date of the offense, June 13, 2022, illegal possession of a narcotic was considered a misdemeanor. Former RCW 69.50.4013 (2021). Prior to that it was a class C felony. Former RCW 69.50.4013 (2017).[1] However, the jury heard no testimony establishing whether Hoover was aware at that time what the penalties were for simple possession or possession with intent to deliver. Thus, the jury was left with the State's argument that it was an admission of the only crime charged—possession with intent to deliver. But evidence of consciousness of guilt of two possible crimes should not be considered when determining if evidence is sufficient to support a conviction of intent to deliver. See State v. Hagler, 74 Wn. App. 232, 236, 872 P.2d 85 (1994). I agree with the majority that this court should not rely on any behavior or statements Hoover may have made reflecting consciousness of guilt. Majority at 6 FN 2; see Hagler, 74 Wn. App. at 236. Nevertheless, the majority agrees with the State that the circumstantial evidence before the jury was sufficient to support intent to deliver.

But the "circumstantial evidence" that the State and the majority rely on supports nothing more than simple possession and, as held by Washington courts, is insufficient to create reasonable inferences to support convictions for possession with intent to deliver. Notably, the State argued in closing, without supporting testimony, that, unlike the jurors who may have $200 in their pocket now and "likely have an employment or … a legitimate source of income," Hoover had no fixed residence and no known job or way of lawfully obtaining money. In other words, because the jury could infer that Hoover was poor and unhoused, they could infer that the $200 found on his person was evidence of his intent to deliver drugs. I cannot endorse such an unsupported inference

---

[1] The legislature increased the penalty back to a class C felony effective July 1, 2023. Former RCW 69.50.4013 (2022).

2

as a reasonable one sufficient to support Hoover's convictions. Thus, I respectfully dissent.

FACTS

On June 13, 2022, Stevens County Sheriff's deputies were aware that Hoover was the subject of a felony warrant and that he was driving a red Ford pickup in the Loon Lake area. Deputies saw Hoover's vehicle parked in the parking lot of the All Seasons grocery store. There was no testimony as to the time of day deputies saw and encountered Hoover, but nothing in the record suggested it was an unusual time or that the grocery store was closed.[2] A female was sitting in the front passenger seat. Deputies did not observe any exchange of drugs or money. Deputies allowed the woman to leave with two dogs that were in the vehicle, but she was not allowed to take any belongings from inside the vehicle, which was impounded and later subject of a search warrant.

Deputy Eric Peterson removed a piece of aluminum foil with black residue and a tooter pipe[3] from Hoover's sweatshirt pocket. When Peterson pulled out the aluminum foil, Hoover said "[t]hat's going to get me 14 months in prison." Peterson searched Hoover's left side front pocket and found a white crystal substance in a bag, later confirmed to be 10.01 grams of methamphetamine. Hoover again stated, "[t]hat too is gonna get me 14 months in prison." Hoover also had $200 in cash on him, that consisted of five $20 bills and a $100 bill.

---

[2] According to a Stevens County Sheriff's report that is in the record but was not admitted at trial, Hoover was seen parked around 5:23 p.m.

[3] Deputies described a tooter pipe as a small pipe used to smoke narcotics.

A search of Hoover's vehicle resulted in the collection of another tooter pipe tucked under a purse in the front passenger area, a piece of aluminum foil on the front seat, and aluminum foil balled up on the floor behind the seat. Behind the driver's seat, deputies found a bag of 50 pills later confirmed to be fentanyl tablets.[4] All the tooter pipes found were used.

The State tried Hoover only on the charges of possession with intent to distribute methamphetamine and fentanyl. At trial, Stevens County Sheriff's deputy Matthew Turnidge testified he was the first deputy to see Hoover's vehicle parked at the All Seasons grocery store and relayed that information to other deputies. When the prosecutor asked Turnidge how he first came into contact with Hoover, Turnidge said, without objection, that another deputy advised him that Hoover had current warrants and was driving a red Ford pickup in the Loon Lake area, where Turnidge happened to be. When the prosecutor asked Turnidge what happened after deputy Peterson arrived, Turnidge, without objection, gave a long narrative answer that included stating that Peterson "advised [Hoover] that he was under arrest for felony warrants." Later, the prosecutor elicited testimony from deputy Peterson, again without objection, that the reason he was looking for Hoover was because he had a felony warrant. The prosecutor then asked Peterson, without objection, a series of non-relevant questions regarding his residence and employment.

> [PROSECUTOR:] Uh-huh. And so, with that [felony warrant] information, did you go to his residence?
>
> [PETERSON:] No.

---

[4] I agree with the majority that defense counsel was deficient for not objecting to deputy Peterson's description of the fentanyl tablets as "Mexi pills." Majority at 17. However, because the remaining evidence is insufficient to support the convictions and is dispositive, there is no need to address Hoover's ineffective assistance of counsel claim as to this evidence.

4

[PROSECUTOR:] Why.

[PETERSON:] Traditionally, he's – we don't know where he's staying—

[PROSECUTOR:] Okay. So he doesn't really have a fixed residence?

[PETERSON:] No.

[PROSECUTOR:] Did you go to his place of employment?

[PETERSON:] No.

[PROSECUTOR:] Why not.

[PETERSON:] I don't – I don't know that he even has a job. I don't know where he works.

When asked what Peterson did next after identifying the driver in the vehicle as Hoover, Peterson testified, without objection, that "we had information that he possibly was armed with a weapon."

During trial Peterson also testified as to what amount is common for personal use of methamphetamine and fentanyl pills, as well as their street value. He testified that the common amount of methamphetamine for personal use was under a gram, and the methamphetamine removed from Hoover's pocket weighed 11 grams, including the bag containing it. Peterson testified that an average user ingests about one fentanyl pill a day, and that Hoover, with a bag of 50 pills, "[a]bsolutely" had more than the typical use. According to Peterson, the cost of a gram of methamphetamine costs about $50 in Stevens County, and that a fentanyl pill costs between $3 to $6. Peterson later clarified on cross that less than a gram was the personal-use amount on average, but that it depends on the user with some using more and some less, and that users could carry on them more than a day's worth of drugs. Peterson also testified that carrying multiple

5

types of drugs is "definitely [an] indicator of someone that is distributing narcotics rather than someone that is using [for] personal use."

Though deputies knew the identity of Hoover's passenger,[5] the State did not call her as a witness. Though one of the used tooters was found tucked underneath the purse, which remained with the vehicle that was impounded and subject to a search warrant, none of the State's witnesses testified as having searched the purse. Hoover did not testify at trial.

At the close of trial, aside from the fact that the State began its closing argument by emphasizing Hoover all but admitted guilt, the prosecutor acknowledged that the State's case was based on circumstantial evidence and that it was asking the jury to find guilt based on inferences. The prosecutor argued

> And the direct facts in this case are the ones that we obtained from Dep. Turnidge, from Dep. Peterson and from the crime lab. And that is that on that afternoon of June 13th, 2022 Mr. Hoover was found to be in possession of – of methamphetamine, found to be in possession of fentanyl, found to be in possession of $200 of unexplained money, unexplained because that gets us into the circumstantial evidence. How's a person with no fixed residence, no known job or way of lawfully obtaining money, receive $200. How does he obtain what – based on the testimony, $50 a gram, ten grams of methamphetamine gets us – unless my math is wrong -- $500 worth of methamphetamine. At $3 a pill, – fifty – 50 pills of fentanyl, $150. So now we're up to $650, $850 total in cash and drugs in his possession.
>   What sort of inference can you draft from that. One inference that you can draw is that he is in possession of more drugs than he needs for his personal use because it's also to obtain money. And Mr. Hoover, like all of us, needs money. He needs to eat. He's at the grocery store. And how does he do that? The circumstantial evidence in this case leads us that he is in possession with intent to deliver.

---

[5] Deputy Peterson said he could not recall the passenger's name off the top of his head and would have to look at his report. Peterson's report identified the passenger by name.

The prosecutor went on to argue, without objection, that "[t]here are no drugs in the purse" or "on her side of the car" despite the fact there was no testimony as to a search of the purse or its contents. The prosecutor concluded by arguing the following:

> We just know that Mr. Hoover is here on this day, he is here with someone who uses drugs, and delivery can be accomplished that way as well, that he is going to give her the drugs, share the drugs with her. And that to me is a very reasonable conclusion, based on the circumstantial evidence in this case.
> Does it make sense that he would have – all of this – all of these drugs, more than enough – when he is not either going to sell them, so that he can obtain what he needs to live, or share them by delivering them to someone else for use there. And whether he is selling them, trading them or giving them to her, it doesn't matter. It's the fact that he would be transferring them to her. And to believe otherwise under this fact and circumstance I believe is unreasonable. I think that we have met that burden of establishing beyond a reasonable doubt the conduct of Mr. Hoover in this case.

After the jury asked whether there was "a specific sentence for possession or possession with intent to deliver that matches or is approximate to '14 months'" and was told to "refer to your instructions," the jury found Hoover guilty of both counts.

## DISCUSSION

### Sufficiency of the Evidence

In determining the sufficiency of the evidence, the test is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Brown, 68 Wn. App. 480, 483, 843 P.2d 1098 (1993). Washington case law forbids the inference of an intent to deliver based on "bare possession of a controlled substance, absent other facts and circumstances[.]" State v. Harris, 14 Wn. App. 414, 418, 542 P.2d 122 (1975). Even viewing the evidence in the light most favorable to the State, as we must do, State v. Stewart, 12 Wn. App. 2d 236, 239, 457 P.3d 1213 (2020), I disagree

7

with the majority's holding that there was sufficient "other facts and circumstances" in addition to evidence of possession to support a conclusion that any <u>rational</u> fact finder could have found the elements of intent to deliver beyond a reasonable doubt. Majority at 4, 13.

An evidence sufficiency challenge, "admits the truth of the State's evidence and all inferences that <u>reasonably</u> can be drawn therefrom." <u>State v. Salinas</u>, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (emphasis added). The trier of fact makes credibility determinations; therefore, this court defers to the jury findings "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." <u>State v. Thomas</u>, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), <u>abrogated in part on other grounds</u>, <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The appellate court's review is "deferential" to the jury's decision. <u>In re Pers. Restraint of Martinez</u>, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

A person is guilty of possession with intent to deliver if they "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(1). To "deliver" means to "transfer from one person to another." RCW 69.50.101(17). Our state Supreme Court and this court recognize that to be convicted of possession with intent to deliver, "the inference of an intent to deliver" must be based on more than "bare possession of a controlled substance, absent other facts and circumstances." <u>Brown</u>, 68 Wn. App. at 483 (quoting <u>Harris</u>, 14 Wn. App. at 418). In <u>State v. Hutchins</u>, 73 Wn. App. 211, 216-17, 868 P.2d 196 (1994), this court recognized that

> [i]n those decisions in which an intent to deliver has been inferred from possession of a large quantity of a controlled substance, some

8

additional factor has been present. State v. Mejia, 111 Wn.2d 892, 766 P.2d 454 (1989) (presence of 1 ½ pounds of cocaine combined with informant's tip and controlled buy supported intent to deliver inference); State v. Llamas–Villa, 67 Wn. App. 448, 836 P.2d 239 (1992) (possession of cocaine coupled with officer's observations of deals supported inference of intent); State v. Lane, 56 Wn. App. 286, 786 P.2d 277 (1989) (1 ounce of cocaine, together with large amounts of cash and scales, supported an intent to deliver); State v. Simpson, 22 Wn. App. 572, 590 P.2d 1276 (1979) (possession of uncut heroin, lactose for cutting and balloons for packaging supported an intent to deliver).

The majority concedes that the "pieces of circumstantial evidence might not suffice—in isolation—to establish Hoover intended to deliver the controlled substances he possessed," but concludes that these otherwise insufficient pieces of evidence "taken together" becomes sufficient so that a rational jury could conclude that Hoover had the intent to deliver drugs to a third person. Majority at 10, 13. For support the majority cites this court's holding in State v. Davis:

> Certainly, an intent to deliver might be inferred from an exchange or possession of significant amounts of drugs or money. And there are also a variety of other circumstances which, taken together with possession of a controlled substance, lead to the conclusion that possession was with the intent to deliver.

Majority at 7 (quoting State v. Davis, 79 Wn. App. 591, 594-95, 904 P.2d 306 (1995) (emphasis added). The majority fails to mention that in this quoted excerpt the Davis court cited State v. Cobelli, 56 Wn. App. 921, 924, 788 P.2d 1081 (1989) after the first sentence. Davis, 79 Wn. App. at 594 n.12. In Cobelli, this court held that "[m]ere possession, without more, does not raise an inference of the intent to deliver," especially where the factual "circumstances observed by the officers are no more indicative of an intent to deliver than they are of mere possession." Cobelli, 56 Wn. App. at 925. And after the second quoted sentence discusses "the other circumstances" taken together

9

that has been upheld to support convictions for intent to deliver, the Davis court cited

the following:

> State v. Mejia, 111 Wn.2d 892, 766 P.2d 454 (1989) (presence of one and one-half pounds of cocaine combined with informant's tip); State v. Taylor, 74 Wn. App. 111, 123, 872 P.2d 53 ("the presence of contraband, together with packaging and processing materials, such as baggies, scales, and cutting agents, sufficiently support a finding of intent to deliver"), review denied, 124 Wn.2d 1029 (1994); State v. Lane, 56 Wn. App. 286, 786 P.2d 277 (1989) (one ounce of cocaine, together with large amounts of cash and scales supported intent to deliver). See State v. Harris, 14 Wn. App. 414, 542 P.2d 122 (1975) (possession of five one-pound bags of marijuana, scale and the fact that marijuana was usually sold to dealers by the pound evidenced an intent to deliver), review denied, 86 Wn.2d 1010 (1976).

79 Wn. App. at 595 n.13 (emphasis added). Neither Davis nor any of the cases Davis

cites stand for the proposition that pieces of circumstantial evidence that, alone, are

insufficient to support a conviction for intent to deliver, could nonetheless support such a

conviction when taken together.

The majority relies on the following pieces of circumstantial evidence: the

quantity of drugs and deputy testimony as to the likelihood the drugs were only for

personal use; the street value of the drugs; the $200 found on Hoover; the variety of

drugs and their separate packaging; and the presence of another person. Majority at 9-

13. Each of them is insufficient to support that a rational jury could find beyond a

reasonable doubt that Hoover had an intent to deliver, and taking the insufficient

evidence together does no better.

A. *Quantity of Drugs and Personal Use*

The majority cites State v. Zunker's conclusion that the jury can weigh all the

circumstances and infer from them an intent to deliver even when the quantity of drugs

is consistent with personal use. 112 Wn. App. 130, 137, 48 P.3d 344 (2002); Majority at

10

12-13. Then, the majority takes this conclusion one step further to hold that there's no case law forbidding the jury from considering the quantity, type, and composition of drugs in defendant's possession or giving weight to an officer's opinion on drugs found. Majority at 6. But the issue on appeal is not whether a jury may consider the quantity of drugs or officer testimony as to personal use. The issue is whether such evidence is sufficient to support a conviction of intent to deliver. <u>Zunker</u> held that "[t]he quantity of drugs alone is not sufficient to establish intent to distribute. But the fact that the amount of drugs is small should also not invalidate a jury verdict, <u>provided corroborating circumstances are present</u>." 112 Wn. App. at 138 (emphasis added). The corroborating circumstances in <u>Zunker</u> included that the defendant had scales bearing meth residue, notebooks with names and credit card numbers, a cell phone battery, meth ingredients, and a key to a vehicle trunk containing anhydrous ammonia. 122 Wn. App. at 136. There are no similar circumstances corroborating an intent to deliver in the instant case.

In <u>State v. Hotchkiss</u>, 1 Wn. App. 2d 275, 404 P.3d 629 (2017), the court explained that evidence of the amount of drugs on the defendant and whether that was consistent with personal use was not enough for intent to deliver. 1 Wn. App. 2d at 281. Rather, the addition of evidence that the defendant had $2,150 <u>in his safe next to the drugs</u> provided a sufficient basis for intent to deliver. <u>Id.</u> at 281-82. Again, the instant case has no similar circumstantial evidence.

Put simply, "an officer's opinion of the quantity of a controlled substance normal for personal use is insufficient to establish, beyond a reasonable doubt, that a defendant possessed the controlled substance with an intent to deliver." <u>Hutchins</u>, 73 Wn. App. at 217.

11

B. *Street value of the drugs*

The majority relies on Lane to state that the value of drugs on a person can support intent to deliver. Majority at 11. However, as explained, it was the value of drugs on the defendant in Lane in addition to a scale and $850 in cash that supported an intent to deliver. Lane, 56 Wn. App. at 297-98. The instant case has no comparable circumstantial evidence.

C. *$200 on Hoover*

The majority states that the jury heard "objective evidence" that Hoover possessed $200 in denominations of a $100 bill and five $20 bills, and that it is proper for the jury to decide whether that sum was "large" or "substantial." Majority at 9. Ironically, the majority completely dismisses the fact that the prosecutor argued to the jury that $200 was an amount that they could have in their pocket at that moment. The State did not argue that $200 was in and of itself a large or substantial sum of money that could, by itself, be evidence of an intent to deliver. Instead, the State asked the jury to infer that the $200 was drug-related money because Hoover did not have a fixed residence or employment. Hoover argues this implies that the poor are more likely to deliver drugs than others, which is not sufficient evidence to support his convictions. I agree.

As an initial matter, the majority states that Peterson's testimony regarding Hoover's residence and employment was "based on his personal knowledge," Majority at 19, but there is nothing in the record to support this conclusion. The only testimony related to Hoover's residence and employment was Peterson's personal opinion that was equivocal at best and without any explanation as to the basis of his opinion.

12

Peterson responded to the prosecutor's question of whether he went to Hoover's residence by explaining, "we don't know where he's staying." The prosecutor then asked, without objection, a follow-up leading question assuming facts not in evidence: "So he doesn't really have a fixed residence?" Peterson answered "No," but he just testified that he did not know where Hoover was staying so it is unclear as to whether this "No" simply follows the fact that Peterson already testified that he does not know where Hoover is staying or whether Peterson has personal knowledge that Hoover does not have a fixed residence. Peterson's "personal knowledge" as to Hoover's employment status is even weaker. Peterson testified, "I don't know that he even has a job, I don't know where he works." This testimony was nothing more than Peterson admitting he did not have information about Hoover's job status, which is not the same as Peterson testifying, based on personal knowledge, that Hoover did not have a job.

The majority correctly indicates that this court held in State v. Matthews, 75 Wn. App. 278, 286, 877 P.2d 252 (1994), that it is impermissible to elicit testimony or argue that poor people are more likely to commit crimes than rich ones. Majority at 19. But the majority goes on to note that Peterson's testimony "is far from the impermissible contention which we have disavowed, that 'poor people are [] more likely to steal than are people of higher income levels'" when that is exactly what the State argued in closing based on Peterson's testimony. Majority at 19.

The State's entire argument as to why the $200 could be considered evidence of possession with intent to deliver was because Hoover could not have had that money for any lawful means because he did not have a home or a job.

The prosecutor argued in closing that, in addition to the drugs, Hoover was

13

[f]ound to be in possession of $200 of unexplained money, unexplained because that gets us into the circumstantial evidence. How's a person with no fixed residence, no known job or way of lawfully obtaining money, receive $200.

The prosecutor later argued to the jury:

We don't have that information. That would be great direct evidence that would drive this home. But you don't need that. I would equate that with you demanding video of the deer going across the living room, and testimony from a wildlife biologist to confirm that that was in fact a deer. Now maybe that makes it more certain, but that's not what we're asking you to do. We are asking you to find beyond a reasonable doubt. And the evidence that we – represented to you does just that.

In Matthews, this court affirmed the defendant's conviction of murder in the first degree and rejected his claim that it was improper for the State to present evidence of his poor financial condition. 75 Wn. App. at 288. For support, the defendant in Matthews cited Wigmore's treatise on evidence:

The lack of money by A might be relevant enough to show the probability of A's desiring to commit a crime in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as evidence of the graver crimes, particularly those of violence:

....

Nevertheless in cases of merely peculative crime (such as larceny or embezzlement) ... the fact that he was in need of it at the time is decidedly relevant[.]

Matthews, 75 Wn. App. at 285 (quoting 2 JOHN HENRY WIGMORE, EVIDENCE § 392(2)(a) (James H. Chadbourn rev. ed. 1979)). This court, in Matthews, 75 Wn. App. at 286, recognized and respected the warning given in Davis v. United States, 409 F.2d 453, 458 (DC. Cir. 1969) (concluding that, while inquiry into an accused's financial background may be relevant in a prosecution for robbery, the prosecution must proceed

gingerly in its exploration, and the trial judge should permit this inquiry only where there is a proffer that the evidence, in light of other proof, is highly probative). "Therefore, while we do not substitute our judgment for that of the trial court, we do closely scrutinize the [evidentiary] ruling, in view of the State's theory and the record as a whole." Matthews, 75 Wn. App. at 286. We "agree[d] with [the defendant] that poor people are not more likely to steal than are people of higher income levels," but recognized that in Matthews "the focus of the evidence was not on poverty, but rather on the fact that the lifestyle of [the defendant] and his family seemingly exceeded the family's income." Id. We reasoned that a "recent bankruptcy followed by living beyond one's means may not be praiseworthy, neither is such evidence inherently so prejudicial as to outweigh its probative value in support of a rational theory of a planned but interrupted robbery." Id. We observed that "[t]he State's presentation of this evidence was sufficiently limited so that any stigma of bankruptcy or poverty was not made a point of primary focus for the jury" and that the "case is more closely akin to those cases where the admission of evidence of financial motive has been bolstered by other evidence which establishes more than the mere fact that the defendant is poor." Id. at 286-87.

The majority maintains that the instant case is similar to Matthews because the focus of the evidence was not on poverty, but rather on "building the circumstantial case for why the quantity of drugs was for delivery and not mere personal use." Majority at 20. The majority holds that the testimony about Hoover's lack of residence and a job were sufficiently limited so that any stigma of poverty was not made a point of primary focus for the jury. Majority at 21. The record establishes the opposite. The prosecutor

15

directed the jury to speculate that the source of the $200 was related to drugs based on the fact Hoover may not have a fixed residence or a job.

> Mr. Hoover was found to be in possession of – of methamphetamine, found to be in possession of fentanyl, found to be in possession of $200 of unexplained money, unexplained because that gets us into the circumstantial evidence. How's a person with no fixed residence, no known job or way of lawfully obtaining money, receive $200.

This was not just a passing comment; the State continued and specifically asked the jurors to compare themselves to Hoover based on their likely financial disparity.

> You'll also have the $200 that was found in his possession. Again, what's – you know, what's $200. –even have $200 in your pocket now. But you also likely have an employment or a source, a legitimate source of income. Unknown if Mr. Hoover has such a thing. Law enforcement certainly doesn't think so. So where did the $200 come from. Was this from the sale – of some of the drugs already?

Unlike Matthews, the State's presentation of Hoover's poverty was a point of primary focus and required the jury to connect a chain of speculation instead of actual evidence that allowed for a reasonable inference. The jury had to speculate that Hoover did not have a fixed residence, that he did not have a job, and because of that the $200 could be inferred as drug-related money, which, according to the State, supports an inference that Hoover possessed drugs with intent to deliver.

The majority also cites State v. Campos, 100 Wn. App. 218, 998 P.2d 893 (2000), to claim that the jury can consider whether money found on a defendant in various denominations supports an intent to deliver. Majority at 9. In Campos, however, the defendant had slightly less than an ounce of cocaine, $1,750 in small denominations in one of the defendant's pockets and an additional $162 in his wallet, as well as a pager, cell phone, charger, and a piece of paper with columns of numbers and a slang word for

cocaine. 100 Wn. App. at 219, 223-24. Again, the instant case does not have similar corroborating evidence of intent to deliver.

The majority also cites Lane, Taylor, and Hotchkiss for support. Majority at 9. However, in these cases, while there was a substantial sum of money and the court upheld an intent to deliver conviction, there was additional evidence supporting an intent to deliver that does not exist in the instant case. As stated, the defendant in Lane was found with $850 and a scale. 56 Wn. App. at 297-98. In Taylor, the police found $5,737, baggies, scales, 15 grams of cocaine, 1 gram of heroin, and 1 bottle of diazepam pills. 74 Wn. App. at 123-24. In Hotchkiss, the defendant had $2,150 in his safe next to the drugs. 1 Wn. App. 2d at 281-82.

## D. Variety of drugs and packaging

The majority contends that the jury could infer an intent to deliver based on the fact Hoover possessed two types of drugs in separate packaging. Majority at 10. But the facts of the instant case are similar to Brown, where this court found insufficient evidence for intent to deliver because the defendant

> had no weapon, no substantial sum of money, no scales or other drug paraphernalia indicative of sales or delivery, the rocks of cocaine were not separately packaged nor were separate packages in his possession, the officers observed no actions suggesting sales or delivery or even any conversations which could be interpreted as constituting solicitation.

68 Wn. App. at 484. Additionally, the court in Brown distinguished its case with other cases where the court found the evidence was sufficient for intent to deliver:

> Washington cases where intent to deliver was inferred from the possession of a quantity of narcotics all involved at least one additional factor. For example, in State v. Llamas-Villa, 67 Wn. App. 448, 836 P.2d 239 (1992), possession of cocaine, heroin, and $3,200, combined with an officer's observations of deals supported the inference of intent. State v. Mejia, 111 Wn.2d 892, 766, P.2d 454 (1989), held that 1 ½ pounds of

17

cocaine <u>combined with an informant's tip and a controlled buy</u> supported an inference of intent to deliver. In <u>State v. Lane</u>, 56 Wn. App. 286, 297, 786 P.2d 277 (1989), 1 ounce of cocaine, <u>together with large amounts of cash and scales</u> supported an intent to deliver, where the court specifically noted that cocaine is commonly sold by the one-eighth ounce. <u>State v. Simpson</u>, 22 Wn. App. 572, 590 P.2d 1276 (1979), held possession of cocaine, uncut heroin, <u>lactose for cutting, and balloons for packaging</u> supported an inference of intent to deliver. In <u>Harris</u> possession of five 1-pound bags of marijuana <u>and scales</u> evidenced intent to deliver. [14 Wn. App. at 418-19.]

68 Wn. App. at 484 (emphasis added). Notably, the "additional factor" was a factor that corroborated intent to deliver, not a factor that corroborates only simple possession. This court has stated that there is not sufficient evidence of intent to deliver when an officer's observation of the circumstances is "no more indicative of an intent to deliver than they are of mere possession." <u>See e.g.</u>, <u>Cobelli</u>, 56 Wn. App. at 925 (officer's observation of defendant in brief conversations with small "clusters" of people in an area known for drug trafficking not enough for intent to deliver).

Similar to <u>Brown</u>, Hoover's crime is nothing more than naked possession because there was no weapon, Hoover had $200 on his person, no scales or drug paraphernalia indicative of sales, he had two different kinds of drugs in separate bags, but the drugs were not in their own individual packaging – i.e., the 50 fentanyl pills were not in 50 individual baggies—, there were no packaging materials in his possession, and the officers observed no action suggesting sale, delivery, or even a conversation between Hoover and the passenger that could be interpreted as constituting an intended drug exchange. Additionally, the instant case, like <u>Brown</u>, is distinguishable from <u>Llamas-Villa</u>, <u>Mejia</u>, <u>Lane</u>, <u>Simpson</u>, and <u>Harris</u> because it lacks at least one additional factor <u>supporting an intent to deliver</u>, such as an officer's observation of a

18

drug deal, an informant's tip, a controlled buy, a large amount of cash <u>and</u> scales, a cutting agent, or materials used to repackage the drugs for multiple sales.

## F. Presence of another person

The prosecutor in closing argued, "It's the fact that [Hoover] would be transferring [the drugs] to her." But there was no evidence of any exchange of physical items between Hoover and his passenger or testimony as to any conversation, let alone one that suggests an intended drug exchange. And though the prosecutor argued that there were no drugs in the passenger's purse, there was no testimony that deputies searched the purse or described the contents in the purse. Even so, the State's argument rests on an assumption that because Hoover was with someone else the jury can infer he had an intent to deliver to her. Defense argued in closing that Hoover and his passenger were in the parking lot of a grocery store and that it seems that a reasonable thing to do is to have cash before going into a grocery store. In rebuttal closing, the prosecutor argued

> Imagine the two people in the truck if he did have groceries. He had a month's worth of groceries. She's sitting [in] the passenger seat with a fork and she's very hungry. You're not going to share some of those groceries with the person – came to the grocery story with? Of course he is. And the same analogy applies to the drugs.

In <u>Brown</u>, the defendant was standing on a sidewalk sharing a bottle of beer in a high narcotics area when police contacted him and discovered a baggie of crack cocaine he dropped. 68 Wn. App. at 481-82. Certainly, another person was with the defendant in <u>Brown</u> at the time he possessed the drugs, but this court characterized the matter as a "naked possession case." <u>Id.</u> at 484. The majority's reliance on the presence of a passenger as "circumstantial" evidence that Hoover intended to deliver drugs to that

passenger is nothing more than asking the jury to speculate. "[T]he existence of a fact cannot rest upon guess, speculation or conjecture." State v. Hutton, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972).

Lastly, the majority repeatedly cites this court's holding in State v. Rafay, 168 Wn. App. 734, 843, 285 P.3d 83 (2012), to conclude that it is for the jury to decide whether Hoover carrying different drugs in different bags proves intent to deliver. Majority at 3, 11-12, 22. Rafay makes no such holding. Rather, in Rafay, the court held that, in a sufficiency of the evidence challenge, the appellate court "must defer to the [trier of fact] on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence." Rafay, 168 Wn. App. at 843 (alteration in original) (citation omitted). Asking this court to reweigh the evidence is not the same as asking this court to determine whether there is sufficient evidence. In Rafay, the defendant asked the court to hold that his favorable, undisputed witnesses are more credible than the State's evidence. Id. Hoover is not asking the court to make a credibility determination.

Overall, the majority leans heavily into the principle that "our constitution demands that we afford our fellow citizens in an impartial jury the deference entrusted to it to 'weigh the evidence' and 'draw its own conclusion' about the persuasiveness of that evidence." Majority at 13. While true, a jury's decision is not limitless and cannot be upheld when based on insufficient evidence. See e.g., Brown, 68 Wn. App. at 486; Cobelli, 56 Wn. App. at 925-26. The juries in those cases, as well as many others, weighed the evidence and were persuaded beyond a reasonable doubt that the evidence was sufficient to support a conviction of intent to deliver. Yet, on appeal, this court concluded the evidence was insufficient. In reviewing a sufficiency of the evidence

20

challenge this court should not simply rely on the principle that we should defer to a jury's determination as to the persuasiveness of the evidence. Doing so defeats the purpose of a sufficiency challenge. Proper deference is already incorporated by a requirement to view the evidence in a light most favorable to the State. See Brown, 68 Wn. App. at 483.

The majority cites State v. Kovac, 50 Wn. App. 117, 119, 747 P.2d 484 (1987), holding that "a trier of fact properly may rely on circumstantial evidence alone, even if it is also consistent with the hypothesis of innocence" but conveniently leaves out the remainder of that sentence, "so long as the evidence meets the Green standard." Majority at 8. The Green standard refers to "whether the evidence is such that a rational trier of fact could have found beyond a reasonable doubt that [the defendant] possessed … with intent to deliver." Kovac, 50 Wn. App. at 119 (citing State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). Similarly, the majority refers to our state Supreme Court's holding in State v. Goodman, 150 Wn.2d 774, 783, 83 P.3d 410 (2004), that, "[e]ven though evidence may be consistent with personal use, it is the duty of the fact finder, not the appellate court, to weigh the evidence." Majority at 8-9. However, the appellate court does not weigh the evidence when there is none to weigh. As a result, when the jury finds a person guilty of possession with intent to deliver in the absence of any evidence indicating so, that conviction must be reversed.

### Ineffective Assistance of Counsel

Reversal also is warranted because Hoover received ineffective assistance of counsel (IAC). As the majority states, to demonstrate IAC, defendants must establish that their attorney's performance was deficient and that deficiency prejudiced them.

State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). IAC claims "present mixed questions of law and fact" and are reviewed de novo. State v. Vazquez, 198 Wn.2d 239, 249, 494 P.3d 424 (2021) (internal quotation marks omitted) (quoting State v. Lopez, 190 Wn.2d 104, 117, 410 P.3d 1117 (2018)). If defendants center their IAC claim on their attorney's failure to object, then they "must show that the objection would likely have succeeded." State v. Crow, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019).

Hoover's counsel was ineffective when they failed to object to testimony that Hoover had a felony warrant and was possibly armed with a weapon. I agree with the majority that defense counsel was deficient for not objecting to this evidence. Majority at 16. However, the majority dismisses Hoover's IAC claim by concluding that his argument in support of the prejudice prong was insufficient. Majority at 16. I disagree.

Before turning to the prejudice prong, I also would hold that defense counsel was deficient for failing to object to Peterson's testimony related to Hoover's residence and employment status. Hoover argues that counsel failed to object to this evidence at trial or during the State's closing argument. The State elicited the testimony about Hoover's residence and employment by asking Peterson where else they looked for Hoover after establishing that they were looking for Hoover because of a felony warrant.

Hoover's residence status and employment were not relevant, and a timely objection would have been sustained. "Evidence is 'relevant' if it makes the existence of a fact of consequence more or less probable to be true than without the evidence." State v. Arredondo, 188 Wn.2d 244, 259, 394 P.3d 348 (2017) (citing ER 401).

"Evidence which is not relevant is not admissible." State v. Atsbeha, 142 Wn.2d 904, 917, 16 P.3d 626 (2001) (quoting ER 402). It was undisputed that deputies contacted Hoover because they saw him parked at the All Seasons grocery store and he had a felony warrant, a fact that could have been sanitized for the jury as just an arrest warrant with a limiting instruction. After Peterson testified that the reason deputies were looking for Hoover was because of an active felony warrant, there was no reason to ask, "did you go to his residence?" and "Did you go to his place of employment" followed by a question asking "Why not" when Peterson gave a simple "No" as an initial answer. Other ways deputies could have located Hoover was not a fact of consequence. It was not relevant and there is no tactical reason why defense counsel would not object to such irrelevant testimony. Thus, defense counsel's failure to object was deficient.

I now turn to the second prong of the IAC claims to determine whether the deficient presentation prejudiced Hoover. In doing so we consider the "reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." Vazquez, 198 Wn.2d at 248; see also Strickland, 466 U.S. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "A 'reasonable probability' is lower than a preponderance standard." State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (citing Strickland, 466 U.S. at 694). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." Crow, 8 Wn. App. 2d at 508 (emphasis added).

23

Hoover argues that the improperly admitted testimony and argument suggested he had a "criminal disposition and was dangerous." During closing, the State twice referred to deputy Peterson's concern that Hoover possessed a weapon. At oral argument, the State also twice appeared to rely on general assumptions about Stevens County to claim that it was not prejudicial for the State in closing to discuss whether Hoover was armed.[6] To the extent the State would like this court to agree that it is not prejudicial to presume that those who possess drugs are more armed and dangerous when they are in Stevens County, I decline such an invitation. It is undisputed that the jury heard that Hoover had a felony warrant, deputies were aware he may be armed, and Peterson, specifically, was concerned Hoover had a weapon. The State opened its closing argument focusing on Hoover's statements to deputies of "that's going to get me 14 months in prison" and concluded that these statements sum up the case because they were an admission of guilt. The jury's question during deliberation as to whether 14 months is a sentence associated with possessing drugs or possessing with intent to deliver begs the question as to whether the jury improperly speculated and considered whether Hoover was a dangerous convicted felon who previously had been convicted of possession with intent to deliver.

Because defense counsel also did not object to the testimony regarding Hoover's residence and employment status, Hoover argues the State was able to use Peterson's testimony as a basis to invite the "jury to speculate that [Hoover's] lack of employment

---

[6] In response to questions related to the prejudicial effect of such discussion in the State's closing, the State responded at oral argument by simply reiterating that the incidence occurred in "Stevens County." Wash. Ct. of Appeals oral arg., State v. Hoover, No. 87203-6-I (June 4, 2025), at 11 min., 33 sec. through 11 min., 35 sec., 17 min., 40 sec. through 17 min., 45 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025061124/.

made his possession of an otherwise normal amount of cash suspect." The prosecutor argued

> what's $200. –even have $200 in your pocket now. But you also likely have an employment or a source, a legitimate source of income. Unknown if Mr. Hoover has such a thing. Law enforcement certainly doesn't think so. So where did the $200 come from. Was this from the sale – of some of the drugs already?

Hoover contends that he was prejudiced because "[t]he inadmissible evidence of poverty and criminality was critical to the State's ability to secure a conviction." As discussed above, not only is the evidence in this case thin, but also it is insufficient to support convictions for intent to deliver. As evident from the jury's question during deliberation and the prosecutor's reliance on Hoover's supposed poverty and unemployment to taint the $200 cash, the evidence—that should have and would have been excluded had defense timely objected—was central to the State's case and undermines confidence in the outcome. Had defense counsel objected, there is a reasonable probability that the result of the proceedings would have been different because the jury would not have been able to consider whether Hoover was a convicted, unhoused, unemployed felon as part of its "other facts and circumstances" in determining whether Hoover had an intent to deliver. I would hold that Hoover met his burden to establish that counsel's deficient performance prejudiced him.[7]

## CONCLUSION

Hoover has established that his counsel was deficient and that the deficient performance was prejudicial. Regardless, the admitted evidence is insufficient to

---

[7] Because I conclude that Hoover's insufficient evidence and IAC claims are dispositive, there is no need to address his prosecutorial misconduct claims.

support convictions for possession with intent to deliver. I would reverse Hoover's

convictions.[8]

_____
Cohen, J.

---

[8] This court has remanded for entry of convictions for simple possession after reversing convictions for intent to deliver when the simple possession crime was offered as a lesser included offense. See e.g., Cobelli, 56 Wn. App. at 925-26; Kovac, 50 Wn. App. at 121. In the instant case, the State elected to only charge Hoover with the greater crime.